IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARD FELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| MBNA AMERICA BANK, N.A. and, | ) | |
| BANK OF AMERICA CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

TO:    THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Defendants MBNA America Bank, N.A. and Bank of America Corporation hereby give

notice of removal and state as follows:

1.    Defendants are seeking to remove this case pursuant to 28 U.S.C. § 1441 from the

Court of Chancery of the State of Delaware in and for New Castle County, where this matter was

filed under the name and style of Edward Felton v. MBNA America Bank, N.A. and Bank of

America Corporation, C.A. No. 1964-N.

2.    Plaintiff filed this action in the Court of Chancery of the State of Delaware in and

for New Castle County on February 28, 2006. Defendants first obtained a copy of plaintiff's

Verified Complaint ("Complaint") on March 1, 2006. The Complaint was served on Defendants

on March 3, 2006. A copy of the Complaint (with its exhibits A through D and the Affidavit of

Edward Felton) is attached as Exhibit 1. A copy of the papers Plaintiff filed in connection with

his Motion for Special Process Server is attached as Exhibit 2.

3.    On March 3, 2006, Plaintiff also served Defendants with a Notice of Motion for

Temporary Restraining Order, a Motion for a Temporary Restraining Order and proposed Order,

and Plaintiff's Opening Brief in Support of His Motion for a Temporary Restraining Order.

Copies of these documents are attached, respectively, as Exhibits 3, 4, and 5.

1

4.    On March 2, 2006, Plaintiff informed the Court of Chancery that the parties had conferred and agreed to postpone any hearing on the temporary restraining order for no more than 14 days. A copy of this letter is attached as Exhibit 6.

5.    No further proceedings in this matter have been had in the Court of Chancery of the State of Delaware in and for New Castle County.

6.    This action includes a federal claim under the Employee Retirement Income Security Act of 1974, as amended (ERISA). 29 U.S.C. § 1001, et seq. The Complaint explains in detail the basis for Plaintiff's claim for fiduciary breach under 29 U.S.C. § 1104 and the terms of the MBNA Special Pension Enhancement Program (SPEP). Exhibit 1 ¶¶ 2-15.

a.    Plaintiff alleges that he was eligible for early retirement benefits under the SPEP but was wrongly not designated as eligible for benefits under the program. Exhibit 1 ¶ 10.

b.    The SPEP was an amendment to the MBNA Corporation Supplement Executive Retirement Plan (SERP). The SERP is a pension plan governed by ERISA because it results in deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002 (2)(A)(ii); Affidavit of Ms. Ann Marie Michocki, attached as Exhibit 7.

c.    The SPEP and the SERP are subject to some, but not all, of the provisions of ERISA because the SERP is unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. Compare 29 U.S.C. § 1132 (enforcement provisions of ERISA apply to such plans) with 29 U.S.C. § 1101(a)(1) (fiduciary provisions of ERISA do not apply to such plans). Plans that are unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees are known as "top hat" plans. Exhibit 7.

d.    On February 23, 2006, Plaintiff filed a claim for benefits under the SPEP. Exhibit 7. The response to that claim for benefits is not yet due and no response has yet been issued. Exhibit 7. As a result, Plaintiff has not exhausted his administrative remedies under the

2

SPEP. D'Amico v. CBS Corp., 297 F.3d 287 (3rd Cir. 2002)(holding exhaustion of administrative remedies required where claim for fiduciary breach really amounts to a claim for benefits).

   e. In his Complaint Plaintiff asserted that "Defendants' determination that he was ineligible [for the SPEP] was in violation of the Employee Retirement Income Security Act, 29 U.S. C. § 1001, et seq., since it was arbitrary and capricious, and in breach of their fiduciary duties under 29 U.S.C. § 1104." Exhibit 1 ¶ 15.

   f. The District Courts of the United States have original jurisdiction over actions under ERISA. 29 U.S.C. § 1132(e)(1).

   7. Plaintiff also claimed that Defendants breached the covenant of good faith and fair dealing under Delaware state law when they used their superior bargaining power to force Plaintiff to give up his rights under the SPEP by conditioning receipt of severance pay and benefits under the MBNA Corporation Change of Control Severance Pay Plan (COC Plan) on receipt of a release. Exhibit 1 ¶ 25.

   a. The COC Plan is a welfare plan governed by ERISA that provides severance pay and benefits in the event of unemployment under certain circumstances. 29 U.S.C. § 1002(1); Exhibit 7.

   b. Plaintiff's state law claim "relates to" the COC Plan and is preempted by ERISA. 29 U.S.C. § 1144(a).

   c. The District Courts of the United States have original jurisdiction over actions under ERISA. 29 U.S.C. § 1132(e)(1).

   8. Therefore, the United States District Courts have original federal question jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(b). This Court has supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367.

   9. This Notice of Removal is being filed pursuant to 28 U.S.C. § 1446(b) within thirty (30) days of receipt of the initial pleading and is removable in that:

               

       a.      The time for filing this petition under 28 U.S.C. § 1446 has not expired.

       b.      Plaintiff explicitly states a claim arising under ERISA in the Complaint. Exhibit 1 ¶ 15; 29 U.S.C. § 1104.

       c.      The state law claim asserted by Plaintiff in the Complaint is preempted by ERISA because it relates to the COC Plan, a welfare plan governed by ERISA. 29 U.S.C. § 1144.

10.     Contemporaneously with this Notice of Removal, Defendant is filing a copy of process and Exhibits 1 through 7. 28 U.S.C. § 1446(a). These include all the process, pleadings, and orders on file in this case in the Court of Chancery of the State of Delaware in and for New Castle County.

11.     This matter may be removed to this United States District Court because it is the United States District Court for the district embracing the place where the action is pending. 28 U.S.C. § 1441(a).

12.     Written notice of the filing of this Notice of Removal will be given to all adverse parties as required by law.

13.     A true and correct copy of this Notice of Removal will be filed with the Register in Chancery of the State of Delaware in and for New Castle County, as required by law.

       WHEREFORE, Defendants respectfully request that this action now pending against it in the Court of Chancery of the State of Delaware in and for New Castle County, be

                                       

removed to this Court, and that this action be placed upon the docket of this Court for further

proceedings, as though this action originally had been instituted in this Court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ *Teresa A. Cheek*
_____
Sheldon N. Sandler (Bar ID 245)
Teresa A. Cheek, Esquire (No. 2657)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6676
Facsimile: (302) 576-3286
Attorneys for Defendants

OF COUNSEL:

Martha Jo Wagner, Esquire
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4002
(202) 344-8300 (fax)

 Dated: March 16, 2006
DC2: 730139v2

EXHIBIT 1

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

## VERIFIED COMPLAINT

1.  Plaintiff, Edward Felton, brings this Verified Complaint for temporary, preliminary and permanent injunctive relief enjoining Defendants from requiring him to release valid rights he has under the MBNA 2005 Special Pension Enhancement Program ("SPEP"), by executing the release for benefits of the MBNA Corporation Change of Control Severance Pay Plan ("COC"), and extending the forty-five day period until a final determination is made on Plaintiff's entitlement to benefits under the MBNA 2005 SPEP, and as a result of Defendants' breach of the covenant of good faith and fair dealing, compensatory and punitive damages, attorneys' fees and cost,  and for such further relief as may be just and equitable.

## JURISDICTION

2.  This Court has jurisdiction pursuant to 10 <u>Del</u>. <u>C</u>. § 341 and this Court's inherent equitable jurisdiction.

## PARTIES

3.  Plaintiff, Edward Felton [hereinafter "Mr. Felton" or "Plaintiff"], is a citizen and resident of New Castle County, Delaware.  Until he was terminated on January 27, 2006, Mr. Felton was a Senior Executive Vice President ("SEVP") in the Technology Sector at MBNA

America Bank, N.A.

4.  Defendant MBNA America Bank, N.A. [hereinafter "MBNA"] is a Delaware corporation, with its headquarters, and registered agent for service of process, located at 1100 North King Street, Wilmington, Delaware.  In November 2005, MBNA merged with Defendant Bank of America Corporation, whose registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

## THE FACTS

### The 2005 Special Pension Enhancement Program "SPEP"

5.  In January 2005, MBNA introduced a Special Pension Enhancement Program ("SPEP"), which was an early retirement option for Senior Executive Vice Presidents (SEVPs).

6.  At the time, Mr. Felton was a SEVP in the Technology Sector at MBNA.  He was one of nine SEVP's in the Technology Sector at MBNA who were over the age of fifty and eligible for the SPEP.

7.  Mr. Felton was advised of the SPEP on January 19, 2005 by Doug Denton, Senior Vice Chairman of MBNA.  Mr. Denton told Mr. Felton that he would check into his file to see what the program offer would be and would get back to him.

8.  After the January 19th, 2005 meeting, Mr. Felton had not heard back from Mr. Denton about the SPEP for over a week, so he contacted Bob Fraser, who was Mr. Felton's immediate manager and who reported directly to Mr. Denton.  Mr. Felton made multiple inquiries to Mr. Fraser about the terms of the SPEP., and expressed an interest in obtaining the SPEP.  He was not provided any information about the SPEP or its terms.  Ultimately, on February 28, 2005, Mr. Fraser told Mr. Felton that he would have to speak directly with Mr. Denton to obtain that information.  Mr. Felton, therefore, immediately contacted Mr. Denton's office and was given

the first available time to meet with him, which was March 2, 2005.

9.   When Mr. Felton met with Mr. Denton, he was told that he was not eligible for the package.  Mr. Denton did not provide Mr. Felton with any factual or other basis for the statement that he was not eligible nor did he advise Mr. Felton as to the eligibility requirements for the SPEP.  He also would not, and did not, provide him Mr. Felton with a copy of the Plan documents or the Summary Plan Description.

## Mr. Felton was, and is, eligible for the SPEP

10.   In December 2005, Mr. Felton received anonymously the SPEP summary [Exhibit A] and learned, for the first time, that he was eligible for, but wrongfully denied, the SPEP, which he would have accepted.  Under the plan, in order to be eligible for the SPEP, a SEVP had to (1) be employed in the United States on January 20, 2005, (2) be fifty years of age or older as of April 1, 2005; and (3) be designated as eligible for the SPEP by MBNA.  Mr. Felton was eligible for the program since he was 50 years old as of April 1, 2005, was a SEVP on January 20, 2005 and was eligible since all other SEVP's similarly situated were designated as eligible and received the benefits of the SPEP.

11.   There was no legitimate basis for denying Mr. Felton the SPEP, which were given to all other similarly situated SEVPs.  Of the nine SEVP's who were 50 or older in the Technology Sector - where Mr. Felton worked - everyone except Mr. Felton was given the SPEP.  John Gala and Ted Dixon were initially given the SPEP.  Mr. Fraser and five other SEVPs (Tom Thomaides, Tom Lackey, Dick Huber, Bill Fore and Sunil Antani) were not initially given the package but were later given the SPEP when they asked for it.

12.   Under the SPEP, Mr. Felton would receive a salary continuation of five years at sixty five percent of his salary (approximately $1,120,000), healthcare benefit continuation until age

65, and other benefits.

13.  On January 23, 2006, Mr. Felton, through counsel, made a request for the benefits under the SPEP.  On January 31st, 2006, Defendants provided a written reply, which was received on February 7th, 2006, denying Mr. Felton's claim. [Exhibit B].  The reply fails to set forth any basis for, or justification of, the failure to offer or provide Mr. Felton with the SPEP or for the exercise of any discretion under the Plan. It affirmatively states that there was no business reason for denying him the package and there is no factual support for the exercise of discretion in not offering him the package.  Defendants allege that Mr. Felton was "not designated" but there is nothing to rebut the arbitrary and capricious action in not so designating him.

14.  Defendants, in their January 31, 2006 letter, advised Mr. Felton if he challenged the denial that he should file a claim with the Plan Administrator, who would review the claim and respond within ninety days, and if the claim was denied, then he could file a further appeal to have the decision of the Plan Administrator reviewed.  The reply also stated that the administrative steps had to be exhausted before a civil action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq., could be filed.

15.  On February 23, 2006, Mr. Felton filed a written appeal of the denial of his benefits asserting that the Defendants' determination that he was ineligible was in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq., since it was arbitrary and capricious, and in breach of their fiduciary duties under 29 U.S.C. § 1104. [Exhibit C].

### The Change of Control Severance Plan

16.  In November 2005, MBNA merged into Bank of America.  As a result of the merger, certain employees, including Mr. Felton, were terminated and provided the MBNA Corporation Change of Control Severance Pay Plan ("COC").

17.  On January 16, 2006, Mr. Felton received a copy of the COC package, which requires him to execute a general release in order to receive the benefits of the COC. [Exhibit D]. Under the COC, Mr. Felton is entitled to receive forty eight weeks of salary continuation, which is about $318,000.  Under the COC, Mr. Felton is also entitled to forty eight weeks of healthcare benefit continuation and other benefits.  The benefits under the COC are substantially less than those under the SPEP.

18.  Since Mr. Felton is over the age of forty, the Age Discrimination in Employment Act, as amended by the Older Workers' Benefit Protection Act, requires Defendants to provide him with forty-five (45) days from the date he received the COC Severance Package/Release to review it, and provides him with seven days (7) after he signs the COC to revoke his acceptance of it.  Since he received the COC package on January 16, 2006, he has until March 2, 2006 to sign the Release and return it to Defendants.  This date, however, can easily be extended by Defendants without any prejudice or harm to it.

19.  Included in the COC is a general release, which releases all claims against Defendants (COC ¶ 7), including his claim for the SPEP.

20.  Defendants, in their January 31, 2006 denial letter, stated that his ERISA mandated administrative appeal of its denial would not extend the above forty-five day period.

**Mr. Felton will be irreparably harmed**

**if he has to waive his rights for the SPEP before a final determination is made as to his**

**entitlement to it.**

21.  Mr. Felton is threatened with immediate and irreparable injury.  As a condition of his receiving his severance under the COC, Defendants are requiring Mr. Felton to release his rights under his SPEP by March 2, 2006.  The COC General Release would release Defendants of their

obligations under the SPEP.  One of the non-economic benefits under the SPEP is healthcare benefits for another eleven years.  Under the COC, Mr. Felton would only receive forty eight weeks of healthcare benefits.  Mr. Felton was diagnosed in May of 2004 with prostate cancer, so if he gives up his rights under the SPEP, he may be unable to obtain healthcare benefits.  Unless this Court grants the relief requested, Mr. Felton is without an adequate remedy at law.

22.  He cannot sue for the SPEP because he will have to release his right to the SPEP by executing the General Release contained in the COC.  Unless this Court enjoins Defendants from requiring him to execute the release before his right to the SPEP is finally determined, he will forever lose one or both of these ERISA benefits.

## The balance of the equities favors Mr. Felton

23.  There is no prejudice to Defendants by an extension of the period to execute the COC General Release but the prejudice to Mr. Felton is irreparable.

24.  If Mr. Felton prevails on his claim to the SPEP, then MBNA will get a release for those benefits.  If Mr. Felton does not prevail, then Defendants would get a release for his receipt of the COC benefits.  Mr. Felton would therefore not receive any benefits without giving a release.

## Covenant of Good Faith and Fair Dealing

25.  Defendants are in breach of the covenant of good faith and fair dealing and in breach of the COC and SPEP by using its superior bargaining power to induce Mr. Felton into giving up his rights under the SPEP by conditioning the receipt of his severance payment upon a release of his rights.

**WHEREFORE**, Mr. Felton prays that this Court enter an order enjoining Defendants from enforcing/insisting upon the 45 day/7 day signature/revocation period until his right to the

MBNA 2005 Special Pension Enhancement Program are determined and awarding Plaintiff

compensatory and punitive damages, attorneys' fees and costs, and for such further relief as may

be just and equitable.

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**


   /s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

# EXHIBIT A



January 20, 2005

You have been identified as an MBNA executive eligible for the MBNA Special Pension Enhancement Program ("SPEP" or "Program"). The SPEP is part of an overall restructuring effort that will help MBNA become the more efficient, flexible company it needs to be. In addition to implementing the SPEP, MBNA is also adjusting the pay and restructuring the positions of a number of executives as part of this overall effort. If MBNA has information regarding your personal situation, you will be advised. If not enough eligible executives participate in the Program, MBNA may take further action to reduce staffing at this level. We stand committed to making these changes in a manner that clearly demonstrates the respect and gratitude this company holds for the efforts of the people of MBNA.

**What This Means for You**

We designed the SPEP to assist people who might be considering retirement to achieve their life goals faster by lowering the general requirements for early retirement eligibility and providing enhanced benefits.

This binder is designed to provide you all the information you need to make your decision. It includes:

- Details of the benefits under the SPEP

- A personalized statement showing how the program impacts you

- An agreement you need to complete and return in order to participate in the Program

**What You Need to Do**

If you accept the SPEP benefits, you will need to sign, return, and not revoke the enclosed *Separation Agreement and General Release* at any time, but no later than 45 days from the date you receive your binder. You may want to consult with an attorney and financial advisor before signing the agreement. If you elect to participate, return two copies of the agreement in one of the enclosed postage pre-paid envelopes.

This SPEP binder includes a variety of information to help you understand your Program benefits. Please review this information carefully.

We hope you will carefully consider this program and take advantage of the information we have provided to help you make a thoughtful decision about your future.

SPEP-D
01.20.05

**PROGRAM DE▪AILS**

# MBNA Special Pension Enhancement Program

### Effective January 20, 2005

This section of the binder describes the MBNA Special Pension Enhancement Program ("SPEP" or "Program"). This section is a reference tool for eligible executives of MBNA Corporation and any related entities ("MBNA" or the "Company"), and provides information about the Supplemental Executive Retirement Plan ("SERP") pension enhancement and other benefits following separation from employment under the SPEP. The SPEP terms, which modify many standard MBNA policies and procedures, are described in more detail in the parts that follow.

- Part 1: Introduction
- Part 2: Eligibility and Participation
- Part 3: Pension Enhancement Benefits
- Part 4: Healthcare Benefits and COBRA
- Part 5: Equity
- Part 6: Pension and Other Related Benefits
- Part 7: Insurance Benefits
- Part 8: Miscellaneous Benefits
- Part 9: Other Important Plan Information

# PROGRAM DETAILS

## Part 1: Introduction

On January 20, 2005, MBNA announced the offering of the MBNA Special Pension Enhancement Program ("SPEP") to certain eligible executives. This date is referred to as the "**announcement date**" in this binder.

MBNA has grown at a phenomenal rate over the last 22 years and worked hard to ensure that we were staffed to appropriately manage the business and serve MBNA's customers. Recently the growth rate of both the industry and MBNA has slowed, leaving MBNA staffed at a level higher than business needs require in many areas. As a result, MBNA has decided to offer the SPEP as part of an overall restructuring effort that will help MBNA become the more efficient, flexible company it needs to be. In addition to implementing the SPEP, MBNA is also adjusting the pay and restructuring the positions of a number of executives as part of this overall effort. If not enough eligible executives participate in the SPEP, MBNA may take further action to reduce staffing at this level.

Eligible executives under the SPEP may end their employment with MBNA and receive the enhanced pension and benefits described in more detail in this binder. The period for making such an election begins on the date an eligible executive receives the materials describing the SPEP and ends 45 days later. In this binder, the period for making such an election is referred to as the "**election period**" and the *Separation Agreement and General Release* being provided to you with this *Program Details* section is referred to as the "**agreement**."

The date an eligible executive's employment with MBNA ends is referred to as the executive's "**employment end date**." MBNA will, in its sole discretion, set employment end dates for eligible executives who participate in the SPEP. Your employment end date will be April 1, 2005, unless MBNA notifies you otherwise.

The period between the announcement date and an executive's employment end date will be referred to as the "**employment period**" in this binder. During the employment period, an MBNA executive will continue to be employed on the same terms and conditions as other similarly situated actively employed executives.

> If MBNA determines you have engaged in conduct that results in or would have resulted in dismissal as determined by the Director of Personnel, you will forfeit all rights to the benefits described in this binder.

PROGRAM DETAILS

## Part 2: Eligibility and Participation

In order to participate in the SPEP you must meet both the eligibility and participation requirements described below.

### Eligibility Requirements

The SPEP described in this section provides enhanced pension and other benefits only to MBNA executives who are employed by MBNA Corporation or any of its U.S. subsidiaries, are at least age 50 as of April 1, 2005, and who are:

- Employed by MBNA at the level of Senior Executive Vice President or are classified as a Consultant or Senior Consultant on January 20, 2005;

- Determined by MBNA in its sole discretion to be eligible for the benefit described in this *Program Details* section; and

- Designated as eligible for the SPEP by MBNA between January 20, 2005 and March 1, 2005.

An initial group of eligible executives was designated as eligible for the SPEP on January 20, 2005. MBNA may designate additional executives before March 1, 2005.

Eligible executives will receive several pieces of information about the pension enhancement and other benefits available under the SPEP, including the information in this *Program Details*, the agreement, and a personalized benefit statement, on or shortly after the announcement date.

### Participation Requirements

Eligible executives may participate in the SPEP by completing steps 1 through 4 below.

**Step 1: Review materials.** If you are eligible for the SPEP, you received a binder which includes information about the Program and a personalized benefit statement describing the SPEP as it applies to you. You should review all the materials in your binder and if you would like to schedule a meeting, call the Executive Compensation department at (302) 432-3278.

**Step 2: Decide.** You need to decide whether you want to end your employment with MBNA and receive the pension enhancement and the other benefits described in this and the other sections of your binder. In making this decision, you may want to talk to your financial advisor and attorney. You can also contact the Executive Compensation department.

**Step 3: Complete the agreement.** If you decide to participate in the SPEP, you must sign, return, and not revoke the agreement as described in *Program Details, Part 3*. You may sign and return both copies of your agreement at any time, but no later than 45 days after you receive your binder.

**Step 4: Receive your employment end date.** Your employment end date will be April 1, 2005, unless you are otherwise notified. If your employment end date is later, you will be required to

**PROGRAM DETAILS**

sign, return, and not revoke another agreement after your employment end date. Employment end dates generally will occur on or before October 1, 2005. If you do not accept the employment end date determined by MBNA, you will not be eligible to receive benefits under the SPEP.

**PROGRAM DETAILS**

## Part 3: Pension Enhancement Benefits

The SPEP provides pension enhancement benefits for executives who are designated as eligible by MBNA between January 20, 2005 and March 1, 2005. These benefits are described below. Other benefits under the SPEP are discussed in *Parts 4 through 8* of this section.

If you meet the eligibility and participation requirements of the SPEP, you are entitled to receive an "**enhanced pension benefit**" under the MBNA Supplemental Executive Retirement Plan ("SERP"). Your enhanced pension benefit will consist of two parts: a "**SERP age enhancement**" and a "**retirement transition benefit.**"

### SERP Age Enhancement

Your SERP benefit will be calculated as if you were five years older than you really are on your employment end date. This will produce a benefit which is larger than your regular benefit under the SERP. Also, even though the SERP currently requires that benefits paid be reduced by all prior employer pension payments, MBNA will <u>not</u> reduce your SERP benefit by these prior employer pension plan payments if you retire under the SPEP. Finally, MBNA will waive the requirement that you be continuously employed by MBNA until the earlier of age 60 with 10 years of employment or age 65, and the requirement that you give one year prior notice to MBNA of your retirement. Other than these changes, the SERP benefit, including the enhancement, will be subject to all the remaining terms and conditions of the SERP and your agreement.

Let's look at a sample SERP benefit calculation with the age enhancement for an MBNA person as of April 1, 2005 based on the following assumptions:

| | |
|---|---|
| Age: | 51 |
| 5-year enhanced age: | 56 |
| Base pay: | $310,000 |
| SERP level | III |

| **Gross SERP Benefit Calculation Before SERP Age Enhancement:** | |
|---|---|
| Base pay, limited to SERP III pay limitation of $300,000 | $300,000 |
| Gross SERP percentage at age 51 in SERP III* | 0% |
| Gross SERP benefit before offsets for MBNA Corporation Pension Plan, Social Security and prior employer benefits ($300,000 x 0%) | $0 |
| **Gross SERP Benefit Calculation After SERP Age Enhancement:** | |
| Base pay, limited to SERP III pay limitation of $300,000 | $300,000 |
| Gross SERP percentage at age 56 in SERP III* | 24% |
| Gross SERP benefit after age enhancement and before offsets for MBNA Corporation Pension Plan and Social Security ($300,000 x 24%) | $72,000 |

* Refer to your SERP plan document for SERP benefit percentages.

# PROGRAM DETAILS

As shown in the table above, this person will receive an annual enhanced gross SERP benefit of $72,000 payable for life. This SERP benefit will be reduced by any amount payable from the MBNA Corporation Pension Plan assuming the pension plan benefit begins on the same date as the SERP benefit regardless of whether or not the person actually commences the pension plan benefit at that time. This amount will also be reduced by the benefit payable from Social Security assuming commencement at the date the SERP payments begin or age 62 if later.

See the *Personalized Information* section of this binder to find out how the SERP age enhancement affects you.

**Retirement Transition Benefit**

Your retirement transition benefit consists of five payments equal to the applicable percentage of the difference between your annual base pay and your annual enhanced SERP benefit before offsets for Social Security and MBNA Corporation Pension Plan benefits. For purposes of the SPEP, base pay is defined as the greater of your base pay on January 20, 2005 or on the day before your employment end date. The applicable percentage varies based upon your years of service as follows:

| Years of Service | Applicable Percentage |
|---|---|
| Less than 10 | 65% |
| 10-14.99 | 75% |
| 15-19.99 | 85% |
| 20.00+ | 100% |

The combined annual retirement transition benefit and gross annual SERP benefit after age enhancement (before applicable offsets) is limited to $800,000 per year. If the $800,000 limit applies to you, the retirement transition benefit will be reduced and shown on your personalized benefit statement.

# PROGRAM DETAILS

Let's continue our prior example and look at the retirement transition benefit calculation for this person as of April 1, 2005:

| Retirement Transition Benefit Calculation: | |
| --- | --- |
| Date of hire | 11/1/89 |
| Years of service (15 years and 5 months) | 15.4 |
| Current base pay | $310,000 |
| Gross SERP age enhancement benefit before offsets for MBNA Corporation Pension Plan and Social Security | $72,000 |
| Difference between current base pay and gross SERP age enhancement benefit | $238,000 |
| Applicable percentage based on years of service as shown in table above | 85% |
| Annual retirement transition payment prior to $800,000 limit ($238,000 x 85%) | $202,300 |
| Annual gross SERP benefit after age enhancement and before offsets for MBNA Corporation Pension Plan and Social Security | $72,000 |
| Maximum annual retirement transition benefit ($800,000 - $72,000) | $728,000 |
| Annual retirement transition benefit (lesser of $202,300 or $728,000) | **$202,300** |
| Total retirement transition payments over five years | **$1,011,500** |

In addition to the annual SERP age enhancement benefit of $72,000 payable for life shown in the prior example, this person will receive five annual installments of $202,300.

## *Timing and Form of Payments*

The SERP age enhancement benefit is payable for life on a monthly basis. The first payment will be made on the first day of the month coinciding with or following your employment end date. The retirement transition benefit consists of five payments. You will receive your first retirement transition benefit payment on the first day of the month following your employment end date, and the remaining four payments will be made on each of the following four anniversaries of that date. Payments of both the SERP age enhancement and the retirement transition benefit for some executives may be delayed six months due to IRS regulations. (See paragraph on IRS regulations as applied to the SERP below.)

In the event of your death after your employment end date, your spouse will receive 100% of the SERP age enhancement benefit (adjusted for the applicable offsets discussed previously) until the 10th anniversary of your employment end date. After the 10th anniversary of your employment end date, your spouse will receive 50% of the SERP age enhancement benefit (adjusted for the applicable offsets discussed previously) for life. Following your death, any remaining payments of your retirement transition payment will be made to your designated beneficiary(ies) under the SERP at the same time and in the same amount that would have been paid to you.

If you receive any pension enhancement or other benefits to which you are not entitled, you must return those benefits to MBNA.

# PROGRAM DETAILS

### IRS Regulations as Applied to the SERP

Congress recently enacted legislation adding a new section 409A to the Internal Revenue Code. This section governs payments made from deferred compensation plans like the SERP. The SERP must be revised to comply with this new law and all of your SERP benefits, including any enhancements, will be subject to the new rules. In fact, the SERP as currently written satisfies most of the new law rules but will require a few modifications, some of which will apply to you if you participate in the SPEP:

- Payments under the SERP may only be made on a separation from service with MBNA (or upon certain other defined events including a change of control). While the IRS has not yet defined what a separation from service is, complete termination of any employment relationship with MBNA will likely be required. As a result, exclusive consulting arrangements or part-time employment with MBNA are not expected to be permitted.

- Some executives may have their benefit commencement under the SERP delayed by six months. If this applies to you, this limitation will be identified on your personalized benefit statement and explained in your agreement.

- The definition of change of control under the SERP may have to be slightly modified.

- The SERP currently provides for automatic payment in a lump sum of all remaining benefits on a change of control, but permits executives to elect to receive payments according to the original schedule. The timing of this election may need to be changed.

We will make whatever changes we believe are necessary to comply with the new law and do our best to assure you will not incur a tax equal to 20% of the value of your benefit, plus interest, which is the penalty for noncompliance. As the IRS clarifies its interpretation of the new law, MBNA will make appropriate amendments to the SERP. Currently the deadline for revising the SERP is the end of 2005.

### Non-compete Agreements

All payments under the SERP are subject to a non-compete requirement. This means that in order for you to continue to be entitled to receive retirement benefits under the SERP, you may not, without written consent of MBNA's Compensation Committee, provide services to or acquire an interest in any entity which competes with MBNA. Certain executives also have individual non-compete agreements with MBNA. MBNA has decided to waive these non-compete provisions with respect to certain executives eligible to participate in the SPEP. Any waiver will be noted on your personalized benefit statement and in your agreement.

### Forms and Releases

In order to participate in the SPEP, you must sign, return, and not revoke your agreement. Two copies of your agreement are included in this binder. Please sign and return both copies. You may

# PROGRAM DETAILS

use one of the two postage pre-paid envelopes contained in the *Forms and Notices* section of this binder to do so.

You may sign and return your agreement at any time within 45 calendar days of receipt. If the 45th day ends on a weekend, you have until the following business day to return your agreement. This means that if you received your agreement on January 20, 2005 you will have until Monday, March 7, 2005 (not Sunday, March 6) to return both copies of your completed agreement.

Your signed agreement should be returned to:

> MBNA – Executive Compensation Department
> PO Box 15343
> Wilmington, DE 19885-5343

If you use internal MBNA mail, send your signed agreement to the Executive Compensation Department at Mailstop 0233.

If you sign and return your agreement to one of the addresses listed above, you may revoke it in writing within seven days after you sign and return your agreement. Otherwise you are not allowed to revoke your agreement.

If you use the United States mail, the postmark is the date your agreement is considered returned. If you use internal MBNA mail, your agreement is considered returned on the date it is received at Mailstop 0233. Your revocation may be returned in one of the two postage pre-paid envelopes contained in the *Forms and Notices* section of this binder.

After the seven-day revocation period, your signed agreement ending your employment becomes irrevocable. Following the revocation period, MBNA will sign and return one fully executed copy of the agreement and notify you of your employment end date.

## *Subsequent Employment*

You are not eligible for reemployment, assignment through a third party at MBNA, or individual consulting arrangements with MBNA without the written approval of the Director of Personnel.

PROGRAM DETAILS

## Part 4: Healthcare Benefits and COBRA

If you meet the eligibility and participation requirements of the SPEP, you are eligible for retiree medical, dental, and vision coverage beginning the first day of the month following your employment end date. COBRA continuation coverage is also available.

### *Retiree Medical, Dental, and Vision Coverage*

**Pre-65 Retiree Medical, Dental, and Vision Benefits**

MBNA currently offers executives who retire under the age of 65 with a benefit under the SERP the opportunity to participate in subsidized healthcare benefits. To participate in the current subsidized pre-65 retiree medical program, executives must meet one of the following requirements:

- Were at least 40 years old with at least 5 years of vesting service under the pension plan on December 31, 1998 and retire after age 50 with at least 15 years of vesting service;

- Retire at age 60 or later with at least 10 years of service.

Subsidized dental and vision coverage is only available if you retire at age 60 or later with at least 10 years of service.

Through the SPEP, you will have a special opportunity to elect subsidized early retiree medical, dental, and vision coverage even if you do not meet these requirements.

Retiree medical, dental, and vision coverage under the SPEP allows you to choose from the same coverage options as active people until you reach age 65. You will pay the same costs as active people.

**Post-65 Retiree Medical Benefits**

Once you reach age 65, or if you are already age 65, you will be eligible for Medicare. MBNA currently provides access to a medical plan that supplements the Medicare coverage. However, you will be responsible for the full cost of coverage after you reach age 65.

**Coverage and Enrollment**

If you do not elect to participate in the retiree medical, dental, or vision programs at the time of retirement, your only future opportunity to enroll will be if you have a qualifying family status change event. For example, if you are under age 65 and not Medicare eligible on your employment end date, you will have an opportunity to enroll in the Medicare Supplement Plan when you become Medicare eligible. If you elect not to participate in the retiree medical, dental, or vision programs under the SPEP on your employment end date and you do not have a qualifying family status change event, you will not be allowed to elect retiree medical, dental, or vision at any time in the future.

As with all plans sponsored by MBNA for its people, the plans providing retiree medical, dental, and vision coverage may be amended, modified, or terminated, in whole or in part, at any time.

# PROGRAM DETAILS

## *COBRA Continuation Coverage*

Under COBRA, you have the option to continue your previously elected medical, dental, and vision coverage at current levels and continue participating in your healthcare flexible spending account ("healthcare FSA") following the end of your employment. You are eligible for a total of 18 months of COBRA continuation coverage as a result of your separation from employment.

If you, your spouse, or a dependent decides to continue medical, dental, or vision coverage through COBRA, you'll pay 102% of the full group rate (and up to 150% in certain cases of disability). The continued coverage will be identical to the coverage provided to similarly situated active people and their families. If you are interested in continuing your medical, dental, or vision coverages after your employment end date, you should evaluate the benefits described on the preceding page before enrolling in COBRA.

You may continue to submit healthcare FSA claims for services incurred before your employment end date for reimbursement from your healthcare FSA until the earlier of March 31, 2006 or when all funds are withdrawn. Expenses incurred after your employment end date are not eligible for reimbursement, unless you enroll in COBRA for the healthcare FSA.

You will receive an application for COBRA continuation coverage from Blue Cross Blue Shield of Delaware (BCBSDE) shortly after your employment ends. Information about COBRA continuation coverage rates for medical, dental, and vision insurance will be included with the application. The COBRA information package will also explain your options regarding coverage continuation for your previously elected healthcare FSA.

If you elect COBRA coverage, you must mail the monthly premium payments directly to BCBSDE by the deadlines described in the application.

**PROGRAM DETAILS**

## Part 5: Equity

### Stock Options

Stock options allow the purchase of MBNA stock in the future for the price on the date the option was granted. If you participate in the SPEP, all unvested stock options granted before January 1, 2005 will vest one day prior to your employment end date. If you are at least age 60 on your employment end date, your unexercised options must be exercised within two years of your employment end date, or, if earlier, within ten years from the date of grant. If you are under age 60 on your employment end date, your options must be exercised within 90 days of your employment end date or, if earlier, ten years from the date of grant. For more information about your options, see the *Personalized Information* section of this binder.

### Restricted Stock

Restricted stock awards provide you with voting rights and dividends but restrict your ability to dispose of the shares until the shares are vested. All unvested restricted shares granted before March 31, 2005 will vest one day prior to your employment end date, except performance-based restricted shares and restricted shares issued under a non-compete agreement. The vesting of any unvested restricted shares granted under a non-compete agreement will be determined by the terms of that agreement. You will be taxed when the shares vest. You will receive the vested shares shortly after your employment end date. All unvested performance-based shares will be forfeited. For more information, see the terms of your restricted stock or non-compete agreement.

PROGRAM DETAILS

## Part 6: Pension and Other Related Benefits

### *MBNA Corporation Executive Deferred Compensation Plan*

The MBNA Corporation Executive Deferred Compensation Plan provides you with the ability to defer your bonus and salary to a future year. Any amounts that MBNA has automatically credited to your account will be available according to the terms and conditions of the MBNA Corporation Executive Deferred Compensation Plan. The same is true for deferred annual bonuses and base pay payments. See your most recent deferred compensation statement for information on when your benefits are payable under the plan. A copy of the MBNA Corporation Executive Deferred Compensation Plan can be found in your Executive Compensation Program binder.

### *MBNA Corporation Pension Plan*

The SPEP does not change the terms of the MBNA Corporation Pension Plan.

If you are eligible to participate in the MBNA Corporation Pension Plan and you have five years of vesting service on your employment end date, you will receive a package of information about your pension plan benefit and distribution options. Your pension plan payments can begin as early as May 1, 2005. Your SERP benefit payable beginning May 1, 2005 will be offset by your pension benefit payable from the MBNA Corporation Pension Plan as of May 1, 2005, regardless of whether you actually begin to receive the benefit as of that date. For more information, see the *Pension Plan* section of the <u>MBNA Guide to Employment and Benefits</u>.

### *MBNA 401(k) Savings Plus Plan*

A brief summary of benefits generally available under the MBNA 401(k) Plus Savings Plan follows. The SPEP does not change the 401(k) benefits to which you may otherwise be entitled under the MBNA 401(k) Plus Savings Plan.

If you are currently a participant in the MBNA 401(k) Plus Savings Plan, you will no longer be eligible to make contributions to that plan and will not receive any further Company contributions after your employment end date. Within 30 days of that date, MBNA will send you a letter containing a distribution options form and detailed information describing your alternatives with regard to your 401(k) account balance. The options, which will be described in more detail, include:

- Transferring the balance directly into another employer's qualified plan or into an IRA account;

- Leaving the balance in the MBNA 401(k) Plus Savings Plan;

- Taking a lump-sum distribution and paying current taxes, or performing a rollover within 60 days of receiving the distribution; or

- Taking a periodic distribution over a period of 10 years or less.

# PROGRAM DETAILS

If you have an outstanding loan, you have 30 days from your employment end date to repay the outstanding balance and any outstanding finance charges in full. If your employment end date is April 1, 2005, this means you have until May 1, 2005 to repay the outstanding balance and any outstanding finance charges in full. Failure to do so will result in the loan defaulting.

If your loan defaults, the loan will be reported to the IRS as a distribution. The taxable portion of the outstanding principal loan balance will be subject to both ordinary income tax and, if you are under age 55, a 10% additional tax. You will receive a 1099R for the distribution at your home address within 30 days after the end of the calendar year.

The information being sent to you after your employment ends will describe the taxation of any unpaid loan balances remaining at the time of a distribution of your account balance. For additional information, please refer to the *401(k) Plus Savings Plan* section of the <u>MBNA Guide to Employment and Benefits</u>.

# PROGRAM DETAILS

## Part 7: Insurance Benefits

### *Supplemental Executive Insurance Plan*

The Supplemental Executive Insurance Plan provides supplemental life insurance through a policy owned by you. MBNA will continue to pay the premiums on your policy after your employment end date pursuant to the terms of the plan. A copy of the Supplemental Executive Insurance Plan can be found in your Executive Compensation Program binder.

### *Retiree Life Insurance Benefits*

If you are entitled to the pension enhancement benefits offered under the SPEP, you are also entitled to retiree life insurance benefits under the MBNA retiree life insurance plan. The table below shows the benefits you are entitled to receive under the SPEP at no cost to you beginning on your employment end date.

| Period of Coverage Following Your Employment End Date | Amount |
|---|---|
| First 12 months | 100% of final annual base pay up to $20,000 |
| Second 12 months | 50% of final annual base pay up to $10,000 |
| Thereafter | $5,000 |

If you do not elect to participate in the SPEP, under current plan terms you must have at least 15 years of vesting service or be at least age 65 when you retire to receive retiree life insurance benefits.

### *Group Life Insurance Conversion*

Any current group life or dependent life insurance coverage you have will end on the last day of the month in which your employment ends, unless you exercise your conversion rights. If you want to convert any of your current group life insurance coverage to individual coverage, you must complete and submit the insurance carrier's application along with the first premium payment within 30 days of when your coverage would otherwise end. For example, if your employment end date is April 1, 2005, your existing group life insurance coverage will end on April 30, 2005 and you will have until May 30, 2005 to complete and submit life insurance conversion forms and the premium. You will receive additional conversion information shortly after your employment end date.

### *Accident Insurance*

Any personal accident insurance coverage you have will end on the last day of the month in which your employment ends. There are no conversion privileges under the personal accident

# PROGRAM DETAILS

insurance program, although an accidental death rider may be available if you convert your life insurance coverage.

### *Group Long-Term Disability*

Your group long-term disability coverage ends on your employment end date. However, if you were a participant in the MBNA Corporation Long-Term Disability Plan for at least 12 months, you may be able to convert your long-term disability coverage to an individual policy. To do so, you must complete and submit the conversion application along with the first premium payment within 30 days of when your coverage would otherwise end. Please note, this is sooner than the deadline for submission of group life insurance conversion forms. For example, if your employment end date is April 1, 2005, you must complete and submit long-term disability conversion forms and the premium no later than May 1, 2005.

For additional conversion information and an application, call the MBNA Benefits Hotline at (302) 453-2401 or 1-888-453-2401 as soon as possible.

### *Individual Long-Term Disability*

As a SERP participant, you have an individual disability policy with Unum. The premiums on this policy were paid by MBNA during your employment. Coverage under this policy ends on your employment end date. A representative from Unum will contact you to discuss options for continuation of this coverage.

### *Short-Term Disability and Workers' Compensation*

Your coverage under MBNA's short-term disability program ends when your employment ends. Your workers' compensation coverage ends in accordance with applicable law. For most people, this means workers' compensation coverage ends on the employment end date.

# PROGRAM DETAILS

## Part 8: Miscellaneous Benefits

### Career Transition Services

MBNA has engaged Right Management Consultants (RMC) to provide career transition assistance to the executives who accept the SPEP. See the *Career Transition Services* section of this binder for information about the services offered as part of the SPEP.

### Adoption

If you are actively enrolled for adoption assistance by January 20, 2005, you will be reimbursed for adoption expenses under the terms of the policy.

### Scholarships

As of January 20, 2005, if your children have applied for, been accepted for, or are already receiving a scholarship through the MBNA Foundation, they will receive or continue to receive the scholarship as long as they are determined to be eligible and remain eligible under the applicable program.

### Personal Time Off (PTO)

Unless applicable law requires otherwise, MBNA will not pay for unused PTO. Before your employment end date, PTO may be taken according to the current policy. Executives who participate in the SPEP will not accrue any additional PTO after employment ends.

### Bonuses

Your participation in the SPEP will not impact your eligibility for a 2004 discretionary bonus under the annual officer bonus program. If you end your employment under the SPEP, you are not entitled to any other bonus, including a 2005 discretionary bonus.

### MBNA Credit Cards and Personal Loans

Within 90 days of your employment end date, your MBNA People card will be converted to a non-endorsed product or a card of your choice.

Any outstanding personal loans you have with MBNA will continue according to the terms of your agreement.

### Flexible Spending Accounts

You may continue to submit claims for services incurred before your employment end date for reimbursement from your flexible spending accounts (FSAs) until the earlier of when all funds are withdrawn or March 31, 2006. Healthcare expenses incurred after your employment end date are not eligible for reimbursement, unless you enroll in COBRA for the healthcare FSA.

# PROGRAM DETAILS

Dependent daycare expenses incurred after your employment end date and before January 1, 2006 may be eligible for reimbursement until your dependent daycare FSA is depleted.

## *Tuition Reimbursement*

Tuition Reimbursement will pay benefits for authorized courses underway on January 20, 2005, subject to the successful completion of those courses in accordance with the terms and conditions of the Tuition Reimbursement program. Upon completion of your current course, submit your final grade, your receipts, and a completed reimbursement form to:

> MBNA Education Department
> *Attention: Education Manager*
> 1100 N. King Street
> Wilmington, DE 19884-0302

## *Daycare*

Your children may continue their enrollment in Great Expectations until your employment end date.

## *Executive Physicals*

Your right to a comprehensive annual physical at MBNA's expense ends on your employment end date.

## *Health Club Membership*

If you have a health club membership through MBNA, it will end on your employment end date.

## *Reimbursement of Business Expenses and Advances*

Once appropriate documentation has been submitted, you will be reimbursed for any outstanding and approved business expenses incurred before your employment end date.

You will have to repay any unused cash advances.

## *Year-End Tax Information*

You will receive your W-2 for the year ending December 31, 2005 at your home address on file with the Company. Therefore, it is extremely important to provide MBNA with written notice of any personal address, name, and tax deduction changes by notifying the Payroll Department at MBNA, 1100 King Street, Wilmington, DE 19884-0234.

# PROGRAM DETAILS

## Part 9: Other Important Plan Information

> This section of the binder is intended to provide a summary of the major provisions of the MBNA Special Pension Enhancement Program. The benefits are described as clearly as possible with minimal use of the technical words and phrases appearing in the legal documents. However, the official plan documents remain the final authority and, in the event of a conflict with this booklet, shall govern in all cases.

### *Summary of Material Modifications*

This section provides a summary of material modifications under ERISA of some of the information contained in the current <u>MBNA Guide to Employment and Benefits</u>. Specifically, the following information is modified:

| Program | | What's Changing |
|---|---|---|
| *Medical, Dental, and Vision* sections in your current <u>MBNA Guide to Employment and Benefits</u> regarding the eligibility requirements for those coverages. | | The rules regarding eligibility for retiree medical, dental, and vision coverage are modified as indicated in this summary of material modifications in *Part 4.* |
| *Life Insurance* section in your current <u>MBNA Guide to Employment and Benefits</u> regarding the eligibility for retiree life insurance coverage. | | The rules regarding eligibility for retiree life insurance coverage are modified as indicated in this summary of material modifications in *Part 7.* |
| *Flexible Spending Accounts* section in your current <u>MBNA Guide to Employment and Benefits</u> regarding payments from your dependent daycare FSA. | | The rules regarding payments from your dependent daycare FSA are modified as indicated in this summary of material modifications in *Part 8.* |

> Effective January 20, 2005, the terms of the SPEP described in this modified *Program Details* section supersede the previous terms of the SPEP.

# CAREER TRANSITION SERVICES

MBNA has engaged Right Management Consultants ("RMC") to provide career transition assistance to the executives who participate in the MBNA Special Pension Enhancement Program ("SPEP" or "Program"). RMC is a premier global organization specializing in career transition services.

Following are some key facts about RMC:

- The company, headquartered in Philadelphia, Pennsylvania, has been providing career-transitioning and organizational consulting since 1980.

- RMC has more than 300 locations worldwide and is recognized for seamless consistency and quality, unwavering principles, and high value.

- RMC consultants have provided career-transitioning services to more than 5,000 corporations and over 500,000 people.

- Many of RMC's staff members serve on boards of local chambers of commerce, non-profits, and human resource councils, as well as advisory boards of local vocational and educational institutions, giving them a thorough knowledge of the local marketplace.

For SPEP participants, MBNA will pay for the Key Executive Services ("KES") program to support your career transition efforts. RMC will provide you with a fully customized, high-level consultation program that delivers individualized services for senior executives. You must initiate the services by December 31, 2005. Once you initiate, RMC services are not time bound and services are available from RMC until you secure new employment.

If you participate in the SPEP, RMC will send you a letter that confirms your eligibility for the KES program and provides detailed instructions on how to initiate those services.

For basic information about the KES program during the election process, you may call 1-267-765-2609 during your election period and speak with the Program Manager, James Ginty.

---

MBNA's obligation under the career transition services portion of the Program is to make payment for career transition services. Your obligation is to initiate the services and work with the career transition services provider chosen by MBNA if you choose.

---

**CAREER TRANSITION SERVICES**



## Career Transition Assistance

Right Management Consultants offers a unique program for the specific needs of very Senior Executives, focused on delivering effective outcomes and successful results. For you, Right provides preeminent executive transition assistance with its ***Key Executive Services*** (KES) ***program***. This is a fully customized, high-level consultation program that delivers individualized services. Right's intensive and highly personalized approach to executive transition is delivered by a Team of experienced senior coaches, who have an in-depth understanding of the transition process, and personal experience in the senior executive community. Your Team includes a program manager who is dedicated to coordinating your transition process.

### *What can you expect from your individually tailored program?*

**We Are There From The Start**

We are with you from the start. The first few hours and days of your transition experience can be difficult and are often critical. We will help you through this period by:

- Helping you focus on this as a beginning, not an end
- Providing counsel and support, whenever we can, however we can

**It Begins With You**

Identifying your strengths, leadership style, and relationship style and assessing your organizational and cultural fit with multidimensional data such as:

- Birkman Advanced Leadership Report and Myers Briggs Type Indicator (MBTI)
- Structured leadership interview with your assessment consultant
- Additional assessment tools as suggested, e.g. Firo-B
- Assessment interpretation and consultation
- Spousal assessment and consultation (if desired)

# CAREER TRANSITION SERVICES

### It's Personalized for You

You and your consultant will design a personalized strategy to serve as a road map for your transition. Through individual executive coaching sessions, you will address such matters as:

- Mastering change: endings, transitions, and new beginnings

- Self-Admiration and "what could be"

- Development of a Personal Mission Statement

- Envisioning your future and career goals

- Professional development programs, e.g. Leadership and Ethics

- Holistic lifestyle concerns - Health, nutrition, and fitness - Personal finances

### You're Part Of A Team

You will partner with a Team of experienced senior coaches, who have an in-depth understanding of the transition process and personal experience in the senior executive community. Your program manager is dedicated to coordinating your personal transition process. Services include:

- Unlimited one-on-one consultations with a personal transition coach, development of a transition strategy and marketing plan

- Access to Right's KES network, a broad array of expert resources, and strategic marketplace contacts

- "Brainstorming" sessions with the KES Team to develop a personal brand, and key messages

- Weekly review of your progress by your KES coaches

- Regular meetings with your Team to review your transition strategy, campaign progress, and marketing plan

- Evaluation of marketplace feedback, including networking meetings and interviews

- Connection with relevant marketplace contacts

- Specialized assistance, as needed

### Your Toolkit

Effective and powerful materials and resources are the key to your transition. Resources include:

- Formalized KES Roundtables provide a variety of guest speakers and relevant topics designed to facilitate discussion of transition issues and enhance your executive skill set. Subjects covered include effective communication, spin selling, panel interviews and many others

- Personal Marketing Plan crafted in consultation with your personal transition coach

# CAREER TRANSITION SERVICES

- Access to on-line resources and customized research assistance with a Marketplace Resources Consultant

- Development of a distinctive and cogent personal brand

- Self-Marketing Materials, including a résumé and biography created in consultation with your transition coach and a Certified Professional Résumé Writer

- Video-taped sessions with an experienced transition consultant designed to hone interviewing and presentation skills

- Executive Office Support, including computer/Internet access, telephone answering service, business cards, letterhead, and administrative services

**Connecting You To The Market**

Through our 300+ offices, we offer KES candidates the use of facilities and contacts world-wide. Right's global network of contacts and Key Executive alumni are available to you. You will have exclusive access to:

- Experienced consultants to aid you in connecting and working with executive recruiters

- The KES Advisory Board; a diverse group of area business leaders who can offer counsel on governance, executive compensation, venture capital sources and also provide access to a rich pool of new contacts

- The Key Executive Alumni Leadership Council, a group of successful KES "graduates" who have been where you are now and are ready to provide advice and assist you in expanding your network

- Invitations to various Right and local business community networking events, including the KES Leadership Series, Chamber of Commerce events, golf and other executive outings

*After You Accept a New Opportunity*

Your support from Right's KES Team does not end when your career transition activity is complete and you accept your new position:

- Your Team will recommend post-landing strategies, including "next steps" for maintaining your network

- The KES Team will stay with you for the first few critical weeks in your new position, providing assimilation and on-boarding coaching

- As a Right KES Alumni, you will receive *The Right Times*, be invited to leadership events and have continued access to on-line resources

SPEP Report

| Job Title | Age | N | N | N |
|---|---|---|---|---|
| CONSULTANT | 56 | 0 | 1 | |
| | 57 | 0 | 1 | |
| | 59 | 0 | 2 | |
| | 60 | 0 | 1 | |
| | 61 | 0 | 1 | |
| | 62 | 0 | 4 | |
| | 63 | 0 | 5 | |
| | 64 | 0 | 1 | |
| | 65 | 0 | 1 | |
| | 66 | 0 | 1 | |
| DIV DIRECTOR I - ADMIN | 50 | 1 | 0 | |
| | 55 | 1 | 0 | |
| | 57 | 1 | 0 | |
| | 58 | 1 | 0 | |
| DIV DIRECTOR I - BUS DEV | 60 | 1 | 1 | |
| | 50 | 2 | 2 | |
| | 53 | 1 | 1 | |
| | 55 | 1 | 1 | |
| | 57 | 1 | 1 | |
| DIV DIRECTOR I - FINANCE | 63 | 0 | 1 | |
| | 50 | 1 | 1 | |
| | 58 | 1 | 1 | |
| DIV DIRECTOR I - TECHNICAL | 53 | 1 | 1 | |
| | 62 | 2 | 0 | |
| DIV DIRECTOR II - ADMIN | 50 | 0 | 0 | |
| | 54 | 1 | 1 | |
| DIV DIRECTOR II - BUS DEV | 58 | 2 | 0 | |
| | 57 | 1 | 0 | |
| DIV DIRECTOR II - CUST SUPPORT | 59 | 1 | 0 | |
| | 49 | 0 | 1 | |
| | 51 | 0 | 1 | |
| DIV DIRECTOR II - FINANCE | 54 | 1 | 0 | |
| | 53 | 0 | 1 | |
| | 55 | 1 | 1 | |

| Job Title | Age | N | N | N |
|---|---|---|---|---|
| DIV DIRECTOR II - TECHNICAL | 54 | 1 | 0 | |
| | 55 | 1 | 0 | |
| | 57 | 2 | 0 | |
| DIV DIRECTOR III - ADMIN | 52 | 1 | 0 | |
| | 59 | 1 | 1 | |
| SENIOR CONSULTANT | 50 | 0 | 1 | |
| | 51 | 0 | 2 | |
| | 54 | 0 | 1 | |
| | 55 | 0 | 1 | |
| | 56 | 0 | 2 | |
| | 57 | 0 | 1 | |
| | 58 | 0 | 3 | |
| | 59 | 0 | 1 | |
| | 62 | 0 | 1 | |
| | 63 | 0 | 3 | |
| | 64 | 0 | 4 | |
| | 69 | 0 | 1 | |
| | 75 | 1 | 1 | |
| SR EXECUTIVE VICE PRESIDENT | 49 | 1 | 0 | |
| | 50 | 0 | 1 | |
| | 51 | 1 | 1 | |
| | 55 | 0 | 0 | |
| | 56 | 1 | 0 | |
| | 61 | 1 | 0 | |

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

# EXHIBIT B

# mbna

January 31, 2006

**VIA US MAIL**

Richard R. Wier, Jr., P.A.
1220 Market Street
Suite 600
Wilmington, DE  19801

Re:    Edward Felton

Dear Dick:

I reviewed the information you provided earlier this week regarding Ed Felton's claim that he is or should be eligible to now take advantage of the MBNA Special Pension Enhancement Program ("SPEP"), which was offered to designated Senior Executive Vice Presidents in the first quarter of 2005. The SPEP was one of several programs offered in the first quarter of 2005 that were designed to reduce primarily management staff as part of a broader MBNA restructuring plan. To be eligible for the SPEP, an executive had to be, *inter alia*, employed by MBNA in the U.S., be at least age 50, and be "designated as eligible for the SPEP by MBNA [in its sole discretion] between January 20, 2005 and March 1, 2005." The SPEP provided enhanced benefits under the MBNA Supplemental Executive Retirement Plan (SERP) for eligible participants.

Mr. Felton did not meet these eligibility requirements because he was not designated by MBNA. As mentioned in the SPEP Program Details, which constitutes the summary plan description, "an initial group of eligible executives was designated as eligible for the SPEP on January 20, 2005." Mr. Felton was not part of the originally designated group, although several of the other people you mentioned were. The SPEP provided that "MBNA may designate additional executives before March 1, 2005." Mr. Felton was not so designated. Only a very few SEVPs were designated for the SPEP after January 20.

Mr. Denton recalls that when the SPEP was announced, Mr. Felton came to him asking if he should "make himself available" for possible designation under the SPEP. Mr. Felton said he was not really ready to leave and didn't know what he would do about finding another job, but wondered about his future with MBNA. Like other senior managers, Mr. Denton had been instructed not to unduly influence people on their decisions regarding the various programs offered. Mr. Denton told Mr. Felton it had to be his own personal decision whether to express interest in the SPEP (understanding there was no guarantee he would be designated), but also told him that additional opportunities were likely to be

available at MBNA because other senior executives were leaving. Mr. Felton did not follow up with Mr. Denton or have any further discussions with him about the SPEP.

According to Mr. Denton, the conversations Mr. Felton apparently described to you about the possibility of managing consolidated Telecommunication centers occurred late in the 2nd quarter, long after the SPEP window closed. Such business plans, however, were put on hold after the Bank of America merger announcement on June 30, 2005.

In short, based on my reading of the SPEP, I do not think Mr. Felton was eligible for the program, and I find no fault or legal issue with how MBNA responded to Mr. Felton's inquiry about the SPEP. Mr. Denton did not play a role in determining Mr. Felton's role in the organization following the Bank of America merger.

If Mr. Felton believes he has a claim for benefits under the SPEP, he should file a claim, in writing, addressed to the plan Administrator. The Administrator will review the claim and respond in writing within 90 days. If the claim is wholly or partially denied, the claimant can appeal the decision by filing a written request for review addressed to the plan Administrator within 60 days. The review will be undertaken by the person or persons to whom the power to review claims has been delegated and the claimant will receive a response within 60 days of the application for review. In the unusual event that the Administrator will not be able to respond within these timeframes, notice of an extension will be provided. These administrative steps must be exhausted before a civil action can be filed under Title 29 of the United States Code, Section 1132(a).

Should Mr. Felton desire to submit a claim to the plan Administrator, he should address it to:

> MBNA America Bank, N.A.
> c/o Executive Compensation Department
> 1100 North King Street
> Wilmington, DE 19884-0233
> Attn: Plan Administrator

While it is Mr. Felton's right to file a claim under the SPEP, this process will not extend the time he has to decide whether to elect benefits under the MBNA Change of Control Severance Pay Plan by signing and returning a separation agreement and release. Please let me know if you have any questions.

Sincerely,

Brooke Bashore-Smith
Senior Vice President and Counsel

2

EFiled:  Feb 28 2006 11:53AM EST
Transaction ID 10676504

# EXHIBIT C

# RICHARD R. WIER, JR., P.A.

ATTORNEY AT LAW

RICHARD R. WIER, JR.*
——————

DANIEL W. SCIALPI

*ALSO ADMITTED IN PA

TWO MILL ROAD, SUITE 200
WILMINGTON, DELAWARE 19806

www.Wierlaw.com

(302) 888-3222
FAX (302) 888-3225

RWier@Wierlaw.com
DScialpi@Wierlaw.com

February 22, 2006

**BY HAND**

MBNA America Bank, N.A.
c/o Executive Compensation Department
1100 North King Street
Wilmington, DE 19844-0233
Attn: Plan Administrator

Dear Plan Administrator:

Please be advised that this firm represents Edward Felton in connection with the arbitrary and capricious denial of his claim for benefits under the MBNA Special Pension Enhancement Program ("SPEP") which was offered to similarly situated Senior Executive Vice Presidents in the first quarter of 2005.

Mr. Felton, through this firm, made a demand for such benefits and that demand was made verbally in the latter part of January, 2006 by a telephone conference with Brooke Bashore-Smith of the MBNA legal department. On February 7th, 2006 we received the reply to our demand and were advised to institute an appeal from that denial. This is to initiate that appeal process and we request that you provide us with all information that was considered, reviewed, utilized or rejected in denying this claim. Also provide us with the Plan Documents of the SPEP and the Summary Plan Description. We also request that the identity of those who considered my client's eligibility and the information that they used and/or had available to them be provided to us.

The denial is a breach of our client's rights under the Plan and under ERISA. On January 19, 2005, Mr. Denton met with Mr. Felton to conduct his annual appraisal. While doing so, Mr. Denton advised that the Bank would be introducing an Early Retirement/Voluntary Severance program for staff through the level of Executive Vice President, and that Senior Executive Vice Presidents (SEVP) and above would have a SPEP, which was an early retirement option. Mr. Denton told Mr. Felton that he did not want him to leave, but would make sure that he was being fair in presenting to him, and all other senior executives, the opportunity for them to make their own decision given whatever their personal situations were. Mr. Denton told Mr. Felton that he would check into his file to see what the program offer would be and would get back to him.

Att: Plan Administrator
February 23, 2006
Page 2

On January 24, 2005, Mr. Felton followed up with Bob Fraser, who was his immediate manager and who reported directly to Mr. Denton, to see if Mr. Felton's SPEP package was available for him to review. Mr. Felton inquired as to the eligibility requirements for the program. Mr. Felton asked Mr. Frasure to check with Mr. Denton since Mr. Felton had learned that other SVEP's of similar age and tenure were being given the SPEP.

In fact, we have learned that our client was eligible for the program since he was 50 years old as of April 1,2005 and was a SEVP on January 20, 2005. There was no legitimate basis for denying him the benefits which were given to all other similarly situated SEVPs. Of the nine SEVP's who were 50 or older in the Technology Sector- where our client worked- everyone except Mr. Felton was given the SPEP. John Gala and Ted Dixon were given the SPEP. Mr. Fraser confirmed to Mr. Felton that: he asked Mr. Denton to give him the SPEP and he was given it. He also told Mr. Felton that five other SEVPs were not given the package but were given the SPEP when they asked for it. Those other SEVPs were: Tom Thomaides, Tom Lackey, Dick Huber, Bill Fore and Sunil Antani. Mr. Felton asked why he was not given the option of the SPEP as was given to the others and was told that he would have to speak with Mr. Denton.

From January 24, 2005 through February 18, 2005, Mr. Felton asked Mr. Fraser on multiple occasions about the SPEP, but Mr. Fraser kept indicating that he had not yet spoken to Mr. Denton about it. Since Mr. Felton had not heard back from Mr. Denton or Mr. Fraser, on February 28, 2005, Mr. Felton contacted Mr. Fraser and asked him if he had spoken with Mr. Denton. Mr. Fraser told him that he would have to speak directly with Mr. Denton. Mr. Felton, therefore, immediately contacted Mr. Denton's office and was given the first available time to meet with him, which was March 2, 2005.

On March 2, 2005, Mr. Felton met with Mr. Denton and was told that he was not eligible for the package and felt that it was financially more attractive for him to stay. He failed to advise Mr. Felton why he allegedly was not eligible for the package. To this day, Mr. Felton has never been advised of the reason he was not eligible, when every other SVEP in his section was.

The January 31st, 2006 reply from MBNA , which was received on February 7th, 2006 and which is the denial from which this appeal is being taken, fails to set forth any basis for, or justification of, the failure to offer or provide Mr. Felton with the SPEPor for the exercise of any discretion under the Plan. It affirmatively states that there was no business reason for denying him the package and there is no factual support for the exercise of discretion in not offering him the package. MBNA alleges that Mr. Felton was "not designated" but there is nothing to rebut the arbitrary and capricious action in not so designating him.

The Bank's determination of Mr. Felton's ineligibility determination was in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq., since it was arbitrary and capricious, and in breach of its fiduciary duties under 29 U.S.C. § 1104. See Shaw v. NVF Co., 694 F. Supp. 1111 (D. Del. 1988)(granting summary judgment to the plaintiff since "the defendants articulated no justification demonstrating the denial [of the pension plan to plaintiff]

Att: Plan Administrator
February 23, 2006
Page 3

to be in the interest of the participants and beneficiaries."[emphasis added]).

Please provide us with any paper work that you need in order to consider this appeal and provide us with the above requested documents.

Very truly yours,

Richard R. Wier, Jr.

Enclosure
cc:    Edward Felton

EFiled:  Feb 28 2006 11:53AM EST
Transaction ID 10676504

# EXHIBIT D

## SEPARATION AGREEMENT AND GENERAL RELEASE

PLEASE READ THIS ENTIRE AGREEMENT CAREFULLY.
NOTE THAT IT CONTAINS A RELEASE AND WAIVER OF RIGHTS OR CLAIMS,
INCLUDING THOSE UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT.
YOU ARE ENCOURAGED TO CONTACT AN ATTORNEY OF YOUR CHOICE
FOR ADVICE CONCERNING ITS TERMS AND LEGAL SIGNIFICANCE
BEFORE SIGNING IT. IF YOU AGREE TO ITS TERMS, SIGN BELOW.

This Separation Agreement and General Release ("Agreement") is by and between Edward J. Felton ("You" or "Your") and Bank of America Corporation, Bank of America, National Association, and/or any of its or their subsidiaries or affiliates (hereinafter referred to collectively as "Company"). In exchange for the mutual promises set forth below, and intending to be legally bound, the Company and Employee agree that:

1.  You understand and agree that, to receive the separation benefits provided by this Separation Agreement and General Release ("Agreement"), and any promises by the Company in connection therewith, you must properly and timely complete, sign and return the Agreement to the Company and that the Statement of Non-Revocation form must similarly be signed and returned eight (8) days thereafter before any benefits under this Agreement will be due to you. Only if you **sign, return, and do not revoke this Separation Agreement and General Release** ("Agreement"), the Company will pay you severance pay and continue certain other benefits as described in the Personalized Summary of Benefits you received with this Agreement and the Summary Plan Description ("SPD") for the MBNA Corporation Change of Control Severance Pay Plan ("COC Severance Pay Plan"). No other payments will be made and no other benefits will be provided under the COC Severance Pay Plan.

2.  Your official termination date with the Company will be as indicated on your Personalized Summary of Benefits, unless you are notified otherwise.

3.  If required by Section 409A of the Internal Revenue Code of 1986, which applies to "specified" individuals (generally the most highly compensated executive officers), payments under this COC Severance Pay Plan will not commence before the date that is six months following the Executive's official termination date. In those limited cases, the Executive will receive, with the Executive's first severance payment, an additional lump sum payment equal to the payments missed during the six-month delay period. The Company will notify you via your Personalized Summary of Benefits at the time you receive this Agreement if this provision applies to you. If future IRS guidance permits earlier payment, payments will start at the earliest time allowed.

4.  You understand that the Company is not entering into this Agreement because it believes you have any valid legal claim against it. Instead, the purpose of this Agreement is to provide you with assistance in the transition of your employment. If you elect not to sign this Agreement, the fact that you were offered it will not indicate in any way that the Company believed you had a claim or were treated unfairly or unlawfully in any way.

-- 1 --

5.  Your right to all benefits under the COC Severance Pay Plan, except those benefits to which you have a legally protected right, will be forfeited if you cease to be an Eligible Employee as described in the COC Severance Pay Plan, e.g., you are dismissed for cause or voluntarily resign without good reason, or if you fail to adhere to any of your obligations in this Agreement, such as the obligations to maintain confidentiality, not to solicit or recruit individuals still employed by the Company, and to comply with any non-competition agreement, including the non-competition provision of this Agreement, that has not been waived by the Company in writing. You further understand you could lose eligibility for severance pay and benefits and may be required to return or repay severance pay already received if the Company becomes aware, during your severance period, of circumstances that would have resulted in your dismissal while employed by the Company.

6.  If you are subsequently reinstated or rehired within the Company while receiving severance payments, you agree that those severance payments will cease upon such rehire or reinstatement.

7.  In exchange for the payments and benefits described in your Personalized Summary of Benefits, the SPD for the COC Severance Pay Plan, and this Agreement, you hereby voluntarily, knowingly, and willingly agree to the following provisions and general release, on behalf of yourself, your heirs, representatives, estates, and assigns:

(a)  You fully release and forever discharge the Company and its officers, directors, employees, assigns, agents, independent contractors, shareholders, attorneys and representatives, jointly and individually, from any manner of suits, actions, or causes of action, including any claim for attorneys fees or costs, whether known or unknown, under any possible legal, equitable, contract, tort, or statutory theory, including but not limited to any claims under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, as amended, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Older Worker Benefit Protection Act, the Family Medical Leave Act ("FMLA"), the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Delaware Fair Employment Practices Act, and any other federal, state, or local statutes, ordinances, executive orders, and regulations relating to employment, and any other federal, state, or local law claims of any kind whatsoever arising out of or in any way related to your employment by, and separation from, the Company. This waiver does not cover rights or claims that may arise after the date you sign the Agreement or which arise out of or in connection with the Agreement itself.

(b)  This paragraph only applies if you are age 40 or over. You understand that as part of the waiver set forth above, you voluntarily and knowingly waive rights or claims under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, that may have existed prior to the date you execute this Agreement. You recognize that you do not waive any claim or right under ADEA that may arise after the execution of the Agreement. You also understand, as described in the COC Severance Pay Plan SPD, that people at the level of Senior Executive Vice President and Group Executive who experience a qualifying termination of employment and meet other eligibility requirements are eligible to receive severance pay and benefits under the COC Severance Pay Plan and this Agreement. You acknowledge that you have

– 2 –

received with this Agreement an Identification Data Sheet listing job titles and ages of all individuals currently selected and not selected to participate in the COC Severance Pay Plan within your same job classification or organizational unit.

(c) You acknowledge that, while you were employed by the Company, it provided for FMLA leave and that information regarding FMLA rights was available to you. You further acknowledge that you were not improperly denied any request for FMLA leave, that you were restored to your position in compliance with FMLA following any period of approved FMLA leave, and that you have not suffered any adverse employment action of any kind, such as termination, demotion, harassment, or reduction or denial of pay or benefits, as a result of taking or requesting FMLA leave. You agree that the information contained in this paragraph is factually accurate and may be used as a sworn statement of fact in any proceeding between you and the Company relating in any way, directly or indirectly, to FMLA leave.

(d) As further consideration for the promises contained in this Agreement, you expressly agree that this Agreement shall extend to and apply to all unknown, unsuspected, and unanticipated claims, injuries, and damages that may exist in your favor as well as those that are now disclosed which arose prior to your execution of this Agreement, notwithstanding any provision of local law to the contrary, including but not limited to California Civil Code Section 1542. Section 1542 provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

You hereby waive all rights under Section 1542 of the California Civil Code and/or any similar state, county, municipal or local law with respect to all Released Parties and expressly agree that this Agreement shall extend and apply to all unknown, unsuspected and unanticipated injuries and damages as well as those that are now disclosed which arose prior to your execution of this Agreement.

(e) You acknowledge that you have not filed any complaints with a court against the Company on or prior to the date of signing this Agreement, which have not been dismissed, closed, withdrawn or otherwise terminated, unless otherwise permitted by law. You agree that you will not file, or permit to be filed in your name or on your behalf, any lawsuit or other claim against the Company in court relating to your employment or the facts and circumstances leading up to your separation from employment. If you are unable to preclude a claim on your behalf, you agree not to seek or accept any personal relief, including but not limited to an award of monetary damages or reinstatement to employment, in connection with such a claim.

(f) This Agreement is confidential and you agree not to disclose the terms of it to any person or entity, including the media, except as required by applicable law, pursuant to legal process, or to your professional advisors or your spouse, and only on

- 3 -

condition that these third parties are informed of, and agree to uphold, the obligation to maintain such confidentiality. You further agree not to make any remarks, whether written or oral, including through electronic transmission such as e-mail or Internet, that may negatively reflect upon the Company, its officers, directors, employees, customers, or business, or otherwise take any action that could reasonably be anticipated to cause damage to the reputation, goodwill or business of the Company or any of its officers, directors, or employees. You agree not to make such negative remarks regardless of whether you believe such remarks to be true or whether they are, in fact, true. You understand and agree that your obligations as described in this paragraph take effect immediately upon termination of your employment and will remain in effect even after the expiration or early termination of the severance pay period.

(g) During your employment with the Company, you had access to confidential and proprietary information and trade secrets, including but not limited to information about the Company's people, customers, business methods, programs, procedures, systems, and strategies (collectively referred to as "Confidential Information"), which information the Company considers to be among its most valuable assets. As part of this Agreement, you agree that you will not disclose this Confidential Information to any person or entity after your separation from employment with the Company, unless you first obtain the written authorization of the Company. You also agree that after your employment termination with the Company, you will not use, or allow any other person or entity to use, except in connection with the Company's business and after first obtaining the written authorization of the Company, this Confidential Information. This confidentiality obligation continues beyond the period for which you receive severance pay under the COC Severance Pay Plan. You further agree to return to the Company all materials in your possession or control that contain or constitute Confidential Information. You understand and agree that your obligations as described in this paragraph take effect immediately upon your termination of employment and will remain in effect even after the expiration or early termination of the severance pay period.

(h) You agree to the non-competition provision in this paragraph unless the Company specifically waives it, all or in part, in writing, or unless you have previously signed an Executive Non-Competition Agreement or any similar agreement, in which case the non-competition provisions of that agreement will apply unless the Company waives them all or in part in writing. (Payments under the COC Severance Pay Plan and this Agreement satisfy the Company's payment obligations under such other non-competition agreements for the period during which you receive severance pay.) Except as described above, you agree that you will not, without the express written consent of the Company, for the duration of your severance pay period, engage directly or indirectly in: a) soliciting, recruiting, or attempting to recruit any person then employed by the Company; b) soliciting business from any of the Company's then current or prospective institutional or organizational customers or providing any services that in any way relate to the credit card programs of any entity with which the Company has or could have a relationship commonly referred to as an "affinity" or "co-branding" arrangement (the proscribed services include, but are not limited to, services relating to sales, endorsement, co-branding or similar agreements, and the operation of credit underwriting), and c) being employed by, consulting for, or engaging in any other way, in any capacity (including as director, officer, employee, partner, owner, consultant, or advisor), in or on behalf of the Credit Card Operations

– 4 –

of a Competitive Business, as defined below, anywhere in the United States, United Kingdom, Ireland, Spain, Canada, China, or in any other country in which the Company may operate a Competitive Business. For purposes of this Agreement, "Competitive Business" means any entity that currently operates in the credit card market or has communicated to you an interest or intent to enter or consider entering the credit card market. For purposes of this Agreement, "Credit Card Operations" includes, but is not limited to, research and development, marketing, sales, operations, account acquisition, and account management associated with credit card programs for a Competitive Business. You expressly acknowledge the existence and scope of non-competition provision and agree that these restrictions are reasonable.

(i) Except as otherwise provided by applicable law, if you breach any of the obligations requested of you in this Agreement, including the agreement not to file legal action, you agree that you shall return any and all amounts provided under this Agreement and the Company shall have no further obligation under this Agreement and may pursue any other relief to which it is or may be entitled under this Agreement or applicable law.

8. Unless specifically mentioned otherwise in this Agreement, all prior agreements and understandings, written or oral, between you and the Company, except individual non-competition agreements or similar agreements you may have signed that are not expressly waived in writing by the Company, are replaced and superseded by this Agreement, and are no longer of any force and effect.

9. If any provision of this Agreement is determined to be invalid or unenforceable for any reason by a court of competent jurisdiction, such determination shall not affect the remaining terms and provisions of the Agreement.

10. To the extent that any amendments to the COC Severance Pay Plan are required to comply with section 409A of the Internal Revenue Code, you consent to such amendments.

11. The payments and other benefits provided for herein are, in whole or part, payments and benefits to which you would not otherwise be entitled absent the COC Severance Pay Plan and this Agreement.

12. No promises or representations except those contained in this Agreement have been made to you by the Company in connection with the termination of your employment.

13. The Company advises you to review this Agreement with an attorney prior to signing it and you acknowledge that you have been so advised. This Agreement, including the release contained in paragraph 7, is executed voluntarily and without duress or undue influence on the part or behalf of the parties hereto, with it being your full intent and full understanding that you are releasing all claims against Releasees. You acknowledge and agree that you have been given a reasonable period of time within which to review and consider this Agreement and obtain the advice of counsel. **To receive benefits under the COC Severance Pay Plan, you must return both: 1) the signed Separation Agreement and General Release, and 2) the Statement of Non-Revocation.** If you are age 40 or over, the Age Discrimination In Employment Act and Older Workers' Benefit Protection Act give you 45 calendar days from the day you receive this Agreement to **review, sign, and return** it if you wish to receive severance pay and other benefits under the COC Severance Pay Plan. If you are under 40 years of age, you have 21 days to **review, sign, and return** the Agreement. You also understand that,

- 5 -

for seven (7) calendar days after you sign this Agreement, you have the right to revoke it, and that this Agreement will not become effective and enforceable until after the expiration of this 7-day revocation period. However, you specifically understand and agree that any attempt by you to revoke this Agreement after this revocation period has expired is, or will be, ineffective. You may use the postage pre-paid envelopes included in your package to return the Agreement and Statement of Non-Revocation.

The Agreement and the Statement of Non-Revocation form should be returned by mail to:

> Bank of America Corporation
> c/o Executive Compensation
> *Attn: MBNA Change of Control Severance Pay Plan*
> PO Box 15343
> Wilmington, DE 19885-5343

If you use the United States mail, the postmark is the date your Agreement and subsequent Statement of Non-Revocation is considered returned. If you use any form of mail or delivery that is not postmarked (e.g., some pre-paid envelopes may not be postmarked), your Agreement or Statement of Non-Revocation is considered returned on the date it is received by Executive Compensation at the address above.

IN WITNESS THEREOF, Executive executes this Agreement on the date and year indicated below intending to be fully and legally bound by its terms. To the extent not governed by federal law, the Agreement is governed by the laws of the State of Delaware without regard to its principles on conflict of law. Your signature completes the Agreem-- ⸱ithout Bank of America's signature. You cannot modify the Agreement in any ⸱ you do so, the entire Agreement will be invalidated, and you will be required to imme⸱ ⸱y any amounts paid to you under the Agreement.

_____     _____
Executive Signature                          Date


Edward J. Felton                             026157
_____     _____
Executive Name (Printed)                     ID Number


[FOR EXECUTIVE COMPENSATION USE ONLY]


_____
Date Received by Executive Compensation

COC Release, Part II
Rev. 11/28/05

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF EDWARD FELTON

NOW COMES Edward Felton, being duly sworn, does depose and say that the

allegations in the Complaint are true and correct to the best of his knowledge, information and

belief.

_Edward Felton_

SWORN TO AND SUBSCRIBED before me this 27th day of February, 2006

DANIEL W. SCIALPI
ATTORNEY AT LAW
Notarial Officer, State of Delaware
Pursuant ... 1323 (a)(3)

EXHIBIT 2

EFiled:  Feb 28 2006 11:53AM EST
Transaction ID 10676504

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

**NOTICE OF MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER**

To:    Brooke Bashore-Smith, Esq.
       Senior Vice Presdient and Counsel
       MBNA America, N.A.
       1100 North King Street
       Wilmington, DE 19884

       PLEASE TAKE NOTICE that Plaintiff's Motion for Appointment of a Special Process

Server will be presented to the Court at the earliest convenience of the Court and counsel.

       Respectfully submitted,

       **RICHARD R. WIER, JR., P.A.**


        /s/ Richard R. Wier, Jr.
       Richard R. Wier, Jr. (#716)
       Daniel W. Scialpi (#4146)
       Two Mill Road, Suite 200
       Wilmington, DE 19806
       (302)888-3222

EFiled:  Feb 28 2006 11:53AM EST
Transaction ID 10676504

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

### MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER

NOW COMES the Plaintiff, pursuant to Chancery Court Rule 4, who moves this Court

for an Order specially appointing Kevin Dunn of Brandywine Process Servers, Ltd. to serve

process upon the above-captioned Defendants by serving them as follows:

> MBNA America Bank, N.A.
> through its registered agent for service of process
> MBNA America Bank, N.A.
> 1100 North King Street
> Wilmington, Delaware.

> Bank of America Corporation
> through its registered agent for service of process
> The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, Delaware.

NOTE to Register in Chancery: Please prepare summons for the Special Process Server.

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**

  /s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200

Wilmington, DE 19806
(302)888-3222

**EFiled:  Feb 28 2006 11:53AM EST**
**Transaction ID 10676504**

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Upon presentation and consideration of Plaintiff's Motion for Appointment of a Special

Process Server,

IT IS ORDERED this _____ day of _____ 2006 that

1.  Plaintiff's Motion is Granted;

2.  Brandywine Process Servers is appointed as Special Process Server to serve process

in the above captioned case.

_____

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

EDWARD FELTON,                          §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §    C.A. No.:  1964 - N
                                        §
MBNA AMERICA BANK, N.A. and             §
BANK OF AMERICA CORPORATION             §
                                        §
        Defendants.                     §

## NOTICE OF MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER

To:    Brooke Bashore-Smith, Esq.
       Senior Vice Presdient and Counsel
       MBNA America, N.A.
       1100 North King Street
       Wilmington, DE 19884

       PLEASE TAKE NOTICE that Plaintiff's Motion for Appointment of a Special Process

Server will be presented to the Court at the earliest convenience of the Court and counsel.

                            Respectfully submitted,

                            **RICHARD R. WIER, JR., P.A.**

                            /s/ Richard R. Wier, Jr.
                            Richard R. Wier, Jr. (#716)
                            Daniel W. Scialpi (#4146)
                            Two Mill Road, Suite 200
                            Wilmington, DE 19806
                            (302)888-3222

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

EDWARD FELTON,                    §
                                  §
                Plaintiff,        §
                                  §
        v.                        §     C.A. No.:  1964 - N
                                  §
MBNA AMERICA BANK, N.A. and       §
BANK OF AMERICA CORPORATION       §
                                  §
                Defendants.       §

### MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER

NOW COMES the Plaintiff, pursuant to Chancery Court Rule 4, who moves this Court

for an Order specially appointing Kevin Dunn of Brandywine Process Servers, Ltd. to serve

process upon the above-captioned Defendants by serving them as follows:

> MBNA America Bank, N.A.
> through its registered agent for service of process
> MBNA America Bank, N.A.
> 1100 North King Street
> Wilmington, Delaware.

> Bank of America Corporation
> through its registered agent for service of process
> The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, Delaware.

NOTE to Register in Chancery: Please prepare summons for the Special Process Server.

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**

/s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200

Wilmington, DE 19806
(302)888-3222

EFiled:  Feb 28 2006 11:53AM EST
Transaction ID 10676504

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.:  1964-N |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Upon presentation and consideration of Plaintiff's Motion for Appointment of a Special

Process Server,

IT IS ORDERED this 1st day of May, 2006 that

1.  Plaintiff's Motion is Granted;

2.  Brandywine Process Servers is appointed as Special Process Server to serve process

in the above captioned case.

_____



## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

EDWARD FELTON
     Plaintiff(s)
        V
MBNA AMERICA BANK, N.A. and
BANK OF AMERICA
CORPORATION
     Defendant(s)

}

CA #: 1964-N

SUMMONS

THE STATE OF DELAWARE
TO:  SPECIAL PROCESS SERVER

### YOU ARE COMMANDED:

To summon the above named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon <u>Richard R. Wier, Jr., Esq.</u>, Plaintiff's attorney whose address is <u>Two Mill Road, Suite 200, Wilmington, DE 19806</u> an answer to the complaint.

To serve upon defendants a copy hereof and of the complaint.

### TO THE ABOVE NAMED DEFENDANTS:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney name above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated <u>March 1, 2006</u>

_____
Register in Chancery

Case # <u>1964-N</u>

EDWARD FELTON
Plaintiff(s)
V
MBNA AMERICA BANK, N.A.
and BANK OF AMERICA
CORPORATION
Defendant(s)

# SUMMONS

Please effectuate service upon:

1-MBNA America Bank, N.A.
2-Bank of America Corporation

BY SPECIAL PROCESS SERVER

Plaintiff's Attorney:  <u>Richard R. Wier, Jr., Esq.</u>

EXHIBIT 3

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

**NOTICE OF MOTION FOR TEMPORARY RESTRAINING ORDER**

To:    Brooke Bashore-Smith, Esq.
       Senior Vice Presdient and Counsel
       MBNA America, N.A.
       1100 North King Street
       Wilmington, DE 19884

       PLEASE TAKE NOTICE that Plaintiff's Motion for Temporary Restraining Order will

be presented to the Court at the earliest convenience of the Court and counsel.

       Respectfully submitted,

       **RICHARD R. WIER, JR., P.A.**


        /s/ Richard R. Wier, Jr.
       Richard R. Wier, Jr. (#716)
       Daniel W. Scialpi (#4146)
       Two Mill Road, Suite 200
       Wilmington, DE 19806
       (302)888-3222

EXHIBIT 4

EFiled:  Feb 28 2006 11:53AM EST
Transaction ID 10676504

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Chancery Court Rule 65, Plaintiff Edward Felton moves this Court for an

Order maintaining the status quo by enjoining Defendants from requiring him to release valid

rights he has under the MBNA 2005 Special Pension Enhancement Program ("SPEP"), by

executing the release for benefits of the MBNA Corporation Change of Control Severance Pay

Plan ("COC"), and extending the forty-five day period until a final determination is made on

Plaintiff's entitlement to benefits under the MBNA 2005 SPEP.

Respectfully submitted,
**RICHARD R. WIER, JR., P.A.**


 _/s/ Richard R. Wier, Jr._____
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

**EFiled:  Feb 28 2006 11:53AM EST**
**Transaction ID 10676504**

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

## ORDER

Upon presentation and consideration of Plaintiff's Motion for a Temporary Restraining Order,

IT IS ORDERED this _____ day of _____ 2006 at ___:____ that

1. Plaintiff's Motion is Granted;

2. Defendants are enjoined from requiring the Plaintiff to execute the release for benefits of the MBNA Corporation Change of Control Severance Pay Plan ("COC"), and the forty-five day period is extended until a final determination is made on Plaintiff's entitlement to benefits under the MBNA 2005 Special Pension Enhancement Program;

3. Plaintiff is not required to post any bond;

4. A preliminary injunction hearing will be scheduled for _____.


_____

EXHIBIT 5

EFiled: Feb 28 2006 11:53AM EST
Transaction ID 10676504

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| EDWARD FELTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No.: |
| | § | |
| MBNA AMERICA BANK, N.A. and | § | |
| BANK OF AMERICA CORPORATION | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
**RICHARD R. WIER, JR., P.A.**
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

## TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of the Nature and Stage of the Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Questions Involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      MR. FELTON WILL SUFFER IMMEDIATE, IRREPARABLE HARM IF THE

        TRO IS NOT ISSUED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.     MR. FELTON HAS DEMONSTRATED A COLORABLE CLAIM ON THE

        MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    THE BALANCE OF THE EQUITIES FAVORS MR. FELTON . . . . . . . . . . . . . . . 8

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF CITATIONS

Ace Limited v. Capital Re Corp., 474 A.2d 95 (Del. Ch. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 7

Shaw v. NVF Co., 694 F. Supp. 1111 (D. Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Stirling Investment Holdings, Inc. v. Glenoit Universal, Ltd., 1997 Del. Ch. LEXIS 19 (Del. Ch.

1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed the Verified Complaint, which seeks temporary, preliminary and permanent injunctive relief enjoining Defendants from requiring him to release valid rights he has under the MBNA 2005 Special Pension Enhancement Program ("SPEP"), by executing the release for benefits of the MBNA Corporation Change of Control Severance Pay Plan ("COC"), and extending the forty-five day period until a final determination is made on Plaintiff's entitlement to benefits under the MBNA 2005 SPEP, and as a result of Defendants's breach of the covenant of good faith and fair dealing compensatory and punitive damages, attorneys' fees and cost, and for such further relief as may be just and equitable.

## STATEMENT OF FACTS

### The 2005 Special Pension Enhancement Program ("SPEP")

In January 2005, MBNA introduced a Special Pension Enhancement Program ("SPEP"), which was an early retirement option for Senior Executive Vice Presidents (SEVPs).  At the time, Mr. Felton was a SEVP in the Technology Sector at MBNA.  He was one of nine SEVP's in the Technology Sector at MBNA who were over the age of fifty and eligible for the SPEP.

Mr. Felton was advised of the SPEP on January 19, 2005 by Doug Denton, Senior Vice Chairman of MBNA.  Mr. Denton told Mr. Felton that he would check into his file to see what the program offer would be and would get back to him.

After the January 19th, 2005 meeting, Mr. Felton had not heard back from Mr. Denton about the SPEP for over a week, so he contacted Bob Fraser, who was Mr. Felton's immediate manager and who reported directly to Mr. Denton.  Mr. Felton made multiple inquiries to Mr. Fraser about the terms of the SPEP, and expressed an interest in obtaining the SPEP.  He was not provided any information about the SPEP or its terms.  Ultimately, on February 28, 2005, Mr. Fraser told Mr. Felton that he would have to speak directly with Mr. Denton to obtain that information.  Mr. Felton, therefore, immediately contacted Mr. Denton's office and was given the first available time to meet with him, which was March 2, 2005.

When Mr. Felton met with Mr. Denton, he was told that he was not eligible for the package.  Mr. Denton did not provide Mr. Felton with any factual or other basis for the statement that he was not eligible nor did he advise Mr. Felton as to the eligibility requirements for the SPEP.  He also would not, and did not, provide him Mr. Felton with a copy of the Plan documents or the Summary Plan Description.

2

In December 2005, Mr. Felton received anonymously the SPEP summary [Exhibit A to the Verified Complaint] and learned, for the first time, that he was eligible for, but wrongfully denied, the SPEP, which he would have accepted.  Under the plan, in order to be eligible for the SPEP, a SEVP had to (1) be employed in the United States on January 20, 2005, (2) be fifty years of age or older as of April 1, 2005; and (3) be designated as eligible for the SPEP by MBNA.  Mr. Felton was eligible for the program since he was 50 years old as of April 1, 2005, was a SEVP on January 20, 2005 and was eligible since all other SEVP's similarly situated were designated as eligible and received the benefits of the SPEP.  Under the SPEP, Mr. Felton would receive a salary continuation of five years at sixty five percent of his salary (approximately $1,120,000), healthcare benefit continuation until age 65, and other benefits.

On January 23, 2006, Mr. Felton, through counsel, made a request for the benefits under the SPEP.  On January 31st, 2006, Defendnats provided a written reply, which was received on February 7th, 2006, denying Mr. Felton's claim. [Exhibit B to the Verified Complaint].  The reply fails to set forth any basis for, or justification of, the failure to offer or provide Mr. Felton with the SPEP or for the exercise of any discretion under the Plan. It affirmatively states that there was no business reason for denying him the package and there is no factual support for the exercise of discretion in not offering him the package.  Defendants allege that Mr. Felton was "not designated" but there is nothing to rebut the arbitrary and capricious action in not so designating him.

Defendants, in their January 31, 2006 letter, advised Mr. Felton if he challenged the denial that he should file a claim with the Plan Administrator, who would review the claim and respond within ninety days, and if the claim was denied, then he could file a further appeal to

have the decision of the Plan Administrator reviewed.  The reply also stated that the

administrative steps had to be exhausted before a civil action under the Employee Retirement

Income Security Act, 29 U.S.C. § 1001, et. seq., could be filed.

On February 23, 2006, Mr. Felton filed a written appeal of the denial of his benefits

asserting that the Bank's determination that he was ineligible was in violation of the Employee

Retirement Income Security Act, 29 U.S.C. § 1001, et. seq., since it was arbitrary and capricious,

and in breach of its fiduciary duties under 29 U.S.C. § 1104. [Exhibit C to the Verified

Complaint].

### The Change of Control Severance Pay Plan ("COC")

In November 2005, MBNA merged into Bank of America.  As a result of the merger,

certain employees, including Mr. Felton, were terminated and provided the MBNA Corporation

Change of Control Severance Pay Plan ("COC").

On January 16, 2006, Mr. Felton received a copy of the COC package, which requires

him to execute a general release in order to receive the benefits of the COC. [Exhibit D to the

Verified Complaint]. Under the COC, Mr. Felton is entitled to receive forty eight weeks of salary

continuation, which is about $318,000.  Under the COC, Mr. Felton is also entitled to forty eight

weeks of healthcare benefit continuation and other benefits.  The benefits under the COC are

substantially less than those under the SPEP.

Since Mr. Felton is over the age of forty, the Age Discrimination in Employment Act, as

amended by the Older Workers' Benefit Protection Act, requires Defendnts to provide him with

forty-five (45) days from the date he received the COC Severance Package/Release to review it,

and provides him with seven days (7) after he signs the COC to revoke his acceptance of it.

4

Since he received the COC package on January 16, 2006, he has until March 2, 2006 to sign the Release and return it to Defendants.  This date, however, can easily be extended by Defendants without any prejudice or harm to them.  Included in the COC is a general release, which releases all claims against Defendants (COC ¶ 7), including his claim for the SPEP.  Defendants, in their January 31, 2006 denial letter, stated that his ERISA mandated administrative appeal of its denial would not extend the above forty-five day period.

## <u>STATEMENT OF THE QUESTIONS INVOLVED</u>

1. Whether a TRO should be issued when the Plaintiff demonstrates that (1) he has a colorable claim on the merits; (2) he will suffer irreparable harm if relief is not granted; and (3) the balance of the hardships favors the Plaintiff.

**ARGUMENT**

**STANDARD OF REVIEW**

A temporary restraining order should be issued if the plaintiff demonstrates that (1) he has a colorable claim on the merits; (2) he will suffer irreparable harm if relief is not granted; and (3) the balance of the hardships favors the moving party. See Stirling Investment Holdings, Inc. v. Glenoit Universal, Ltd., 1997 Del. Ch. LEXIS 19, *5 (Del. Ch. 1997). Since the court has little time to digest the merits, it needs to tightly concentrate "on whether the absence of a TRO will permit imminent, irreparable injury to occur to the applicant and whether that possibility of injury outweighs the injury that the TRO itself might inflict on the defendants." Ace Limited v. Capital Re Corp., 474 A.2d 95, 102 (Del. Ch. 1999).

**I.     MR. FELTON WILL SUFFER IMMEDIATE, IRREPARABLE HARM IF THE TRO IS NOT ISSUED.**

Mr. Felton is threatened with immediate and irreparable injury. As a condition of his receiving his severance under the COC, Defendants are requiring Mr. Felton to release his rights under his SPEP by March 2, 2006. The COC General Release would release Defendants of their obligations under the SPEP. One of the non-economic benefits under the SPEP is healthcare benefits for another eleven years. Under the COC, Mr. Felton would only receive forty eight weeks of healthcare benefits. Mr. Felton was diagnosed in May of 2004 with prostate cancer, so if he gives up his rights under the SPEP, he may be unable to obtain healthcare benefits. Unless this Court grants the relief requested, Mr. Felton is without an adequate remedy at law.

He cannot sue for the SPEP because he will have to release his right to the SPEP by executing the General Release contained in the COC. Unless this Court enjoins Defendants from

requiring him to execute the release before his right to the SPEP is finally determined, he will forever lose one or both of these ERISA benefits.

## II.     MR. FELTON HAS DEMONSTRATED A COLORABLE CLAIM ON THE MERITS

As set forth in the Verified Complaint, Mr. Felton has shown the likelihood of success on the merits. Defendants' denial of the SPEP was in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq., since it was arbitrary and capricious, and in breach of its fiduciary duties under 29 U.S.C. § 1104.  There was no legitimate basis for denying Mr. Felton the SPEP, which were given to all other similarly situated SEVPs.  Of the nine SEVP's who were 50 or older in the Technology Sector - where Mr. Felton worked - everyone except Mr. Felton was given the SPEP.  John Gala and Ted Dixon were initially given the SPEP.  Mr. Fraser and five other SEVPs (Tom Thomaides, Tom Lackey, Dick Huber, Bill Fore and Sunil Antani) were not initially given the package but were later given the SPEP when they asked for it.

In addition, when Mr. Felton met with Mr. Denton, he was told that he was not eligible for the package.  Mr. Denton did not provide Mr. Felton with any factual or other basis for the statement that he was not eligible nor did he advise Mr. Felton as to the eligibility requirements for the SPEP.  He also would not, and did not, provide him Mr. Felton with a copy of the Plan documents or the Summary Plan Description.  See Shaw v. NVF Co., 694 F. Supp. 1111 (D. Del. 1988)(granting summary judgment to the plaintiff since "the defendants articulated no justification demonstrating the denial [of the pension plan to plaintiff] to be in the interest of the participants and beneficiaries."[emphasis added]).

8

### III.    THE BALANCE OF THE EQUITIES FAVORS MR. FELTON

There is no prejudice to Defendants by an extension of the period to execute the COC General Release but the prejudice to Mr. Felton is irreparable.

If Mr. Felton prevails on his claim to the SPEP, then Defendants will get a release for those benefits.  If Mr. Felton does not prevail, then Defendants would get a release for his receipt of the COC benefits.  Mr. Felton would therefore not receive any benefits without giving a release.

## <u>CONCLUSION</u>

Based on the above reasons, and the authorities in support thereof, Plaintiff respectfully requests that this Court enter an Order enjoining Defendants from enforcing/insisting upon the 45 day/7 day signature/revocation period until his right to the MBNA 2005 Special Pension Enhancement Program are determined.

Respectfully submitted,

**RICHARD R. WIER, JR., P.A.**

  /s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

10

EXHIBIT 6

EFiled:  Mar  2 2006  3:58PM EST
Transaction ID 10704060

# RICHARD R. WIER, JR., P.A.

ATTORNEY AT LAW

RICHARD R. WIER, JR.*
————————

DANIEL W. SCIALPI

*ALSO ADMITTED IN PA

TWO MILL ROAD, SUITE 200
WILMINGTON, DELAWARE 19806

www.Wierlaw.com

(302) 888-3222
FAX (302) 888-3225

RWier@Wierlaw.com
DScialpi@Wierlaw.com

March 2, 2006

The Honorable William B. Chandler, III
Court of Chancery
New Castle County Courthouse
500 North King Street
Wilmington, DE 19801

      Re:    **Edward Felton v. MBNA and Bank of America**
             **C.A. No. 1964-N**

Dear Chancellor Chandler:

      We represent the Plaintiff, Edward Felton, in the above captioned case.  Sheldon Sandler represents the Defendants.  Yesterday, February 28, 2006, we filed a Motion for a Temporary Restraining Order.

      The parties have conferred and have agreed to postpone any hearing on the TRO for a period of no more than fourteen (14) days so that the parties can discuss resolution of Mr. Felton's claims.  We reserve the right to renew our request for a TRO without any prejudice, and will advise the Court in the near future as to the status.

                Very truly yours,

                /s/Richard R. Wier, Jr.

                Richard R. Wier, Jr.

EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARD FELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| MBNA AMERICA BANK, N.A. and, | ) | |
| BANK OF AMERICA CORPORATION | ) | |
| Defendant. | ) | |

## <u>DECLARATION OF ANN MARIE MICHOCKI</u>

I, ANN MARIE MICHOCKI, hereby swear and affirm that the following facts are true and correct based on my personal knowledge.

1.    The MBNA Special Pension Enhancement Program (SPEP) was an amendment to the MBNA Corporation Supplement Executive Retirement Plan (SERP).

2.    The SERP results in deferral of income by employees for periods extending to the termination of covered employment or beyond.

3.    The SERP is unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

4.    Plans that are unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees are known as "top hat" plans.

5.    On February 23, 2006, Plaintiff filed a claim for benefits under the SPEP.

6.    The response to that claim for benefits is not yet due and no response has yet been issued.

03/14/2006     21:02     THE PARK HOTEL → 13024323662                              NO.422     P002

MAR-14-2006 TUE 02:05 PM  MBNA EXEC COMP     Case 1:06-cv-00176-KAJ     Document 1-8     FAX NO. 3024323882     Filed 03/16/2006     Page 3 of 3     P. 05

7.     The MBNA Corporation Change of Control Plan (COC Plan) is a welfare plan governed by ERISA that provides severance pay and benefits in the event of unemployment under certain circumstances.

Pursuant to 28 U.S.C. § 1746, I, Ann Marie Michocki, hereby declare under penalty of perjury that the foregoing is true and correct.

Executed at ___March 14___ on _____, 2006.

_Ann Marie Michocki_

Ann Marie Michocki

DC2: 732192.1

CERTIFICATE OF SERVICE

I, Teresa A. Cheek, Esquire, hereby certify that on March 16, 2006, I caused two copies of the foregoing Notice of Removal and Exhibits 1 through 7 thereto and this certificate of service to be served by hand delivery on:

Richard R. Wier, Jr. Esquire
Two Mill Road, Suite 200
Wilmington, DE 19806

/s/ Teresa A. Cheek
Teresa A. Cheek, Esquire (No.  2657)

JS 44 (Rev. 3/99)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

EDWARD FELTON

(b) County Of Residence Of First Listed Plaintiff:
(Except In U.S. Plaintiff Cases)
New Castle

### DEFENDANTS

MBNA AMERICA BANK, N.A., and BANK OF AMERICA CORPORATION

County Of Residence Of First Listed Defendant: New Castle
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) Attorneys (Firm Name, Address, And Telephone Number)

Richard R. Weir, Jr., Esq., Two Mill Rd.,
Wilm, DE 19806

Attorneys (If Known)

Young Conaway Stargatt & Taylor, LLP

### II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place An X In One Box For Plaintiff And One Box For Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### V. NATURE OF SUIT (Place An X In One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 U.S.C. 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure of | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | Property 21 U.S.C. 881 | 28 U.S.C. 157 | ☐ 450 Commerce/ICC Rates, |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | etc. |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R.& Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers | Injury Product | ☐ 650 Airline Regs | | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 820 Copyrights | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | | Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL ROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | | | Exchange |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | | | 12 U.S.C. 3410 |
| ☐ 190 Other Contract | Product Liability | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization |
| | | Product Liability | ☐ 720 Labor/Mgmt | ☐ 863 DIWC/DIWW | Act |
| | | | Relations | (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | Determination Under |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff | Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl Ret Inc | or Defendant) | ☐ 950 Constitutionality of |
| | | ☐ 550 Civil Rights | Security Act | ☐ 871 IRS - Third Party | State Statutes |
| | | ☐ 555 Prison Condition | | 26 U.S.C. 7609 | ☐ 890 Other Statutory Actions |

### IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding

☒ 2 Removed from Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

Appeal to District Judge from
☐ 7 Magistrate Judgment

### VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTSE UNLESS DIVERSITY.)

29 U.S.C. §§ 1001 et seq.

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

CLASS ACTION ☐ YES ☒ NO

DEMAND $

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

### VIII. RELATED CASE(S) (See instructions)
IF ANY

JUDGE: _____

DOCKET NUMBER: _____

DATE

3/16/06

SIGNATURE OF ATTORNEY OF RECORD

Taun A. Chte

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 6 - 1 7 6 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____ $\partial$ ____ COPIES OF AO FORM 85.

MAR 1 0 2006
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Bryan Davis
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action